BUILDING CHEMICALS CORPORATION, Claimant, *v.* STATE OF NEW YORK, Defendant.
(Claim No. 24786.)

Court of Claims, September 23, 1937.

*Samuel J. Du Boff*, for the claimant.

*John J. Bennett, Jr., Attorney-General [Alfred F. Spagnola, Assistant Attorney-General*, of counsel], for the defendant.

RYAN, J. Claimant contracted with the State to furnish all materials, labor, transportation and appliances required for waterproofing twenty buildings at Pilgrim State Hospital in accordance with certain specifications and drawings. The work was entered upon by claimant, completed and accepted and claimant has been paid its contract price.

In this suit claimant seeks to recover from the State what it says was the increased cost to it of paying waterproofers employed on the job a wage of one dollar and twenty-eight and one-eighth cents per hour instead of rates which it contemplated. The rate paid was that fixed by the State Industrial Commissioner as the prevailing rate of wages for the occupation of waterproofers.

The contract was financed in part by a grant from the Federal Emergency Administration of Public Works and was subject to the regulations of the Works Progress Administration.

Claimant's bid was opened November 13, 1935, and contract was awarded November 26, 1935. Under date of December 26, 1935, claimant was notified by the Acting State Director of Works Progress Administration Activities that it should prepare a work schedule and analysis of labor upon forms and in accordance with instructions issued by said Director and should send two copies thereof to the owner, *i. e.*, the State of New York.

Claimant complied with this instruction under date of January 3, 1936, transmitting the forms in duplicate to the State's chief engineer. In this labor analysis claimant proposed to employ what it termed " Skilled Appliers " paying them one dollar an hour and " Intermediate Appliers " paying them seventy-five cents an hour. A memorandum prepared by claimant was attached to the Works Progress Administration form. This memorandum described the type of work to be performed both by " Skilled Appliers " and by " Intermediate Appliers." Claimant's labor analysis set forth that it would pay common labor fifty-five cents an hour.

On January 9, 1936, claimant signed its contract which had been prepared by the defendant. It contained the advertised specifications upon which claimant had made its bid. Among other things, these provided that claimant should pay prevailing rates of wages as required by section 220 of the Labor Law. There was set forth a schedule of minimum hourly wage rates for some twenty odd trades and occupations. This schedule, however, failed to mention either " Waterproofers," " Skilled Appliers " or " Intermediate Appliers." Immediately following the schedule appeared this statement: " If after the award of this contract

it becomes necessary to employ any person in a trade or occupation not herein listed, such person shall be paid not less than such hourly rate of wage, fairly comparable to the above rates, as shall be approved by the State Director, and such minimum wage rate shall be retroactive to the time of the initial employment of such person in such trade or occupation."

Claimant entered upon its work and began paying to the men whom it termed " Skilled Appliers " the proposed rate of one dollar per hour. No " Intermediate Appliers " were ever used by the claimant on the job.

On April 7, 1936, claimant wrote a letter to the State's chief engineer calling attention to the paragraph of the contract which listed the trade or occupation and hourly wage rate. This letter stated:

" No provision for hourly wage rate is made for the skilled applier of chemicals which are used to meet your specification requirements.

" We request that you direct us as to what hourly wage rate to pay this trade or occupation."

Thereafter claimant's representative had several conferences with the director of the State's Division of Industrial Relations and the outcome was that under date of May fourteenth the chief engineer directed claimant to pay the workmen employed by it as waterproofers at the rate of one dollar and twenty-eight and one-eighth cents per hour. The chief engineer's letter stated that the Labor Department advised that it " saw no reason for making any change in the rate as previously established at one dollar and twenty-eight and one-eighth cents per hour for the workmen employed in waterproofing work."

Claimant complied with the directions, paid the increased rate and besides made up their back pay to workmen previously employed at the lesser rate. Thereafter claimant applied to the chief engineer for an order on contract in the amount of $6,709.40 to reimburse it for its increased labor cost. This was refused. Claimant now sues for like amount.

Subdivision 3 of section 220 of the Labor Law provides as follows: " It shall be the duty of the fiscal officer, as defined in this section, to ascertain and determine the schedule of wages to be paid workmen, laborers and mechanics on each such public work, prior to the time of the advertisement for bids, and such schedule of wages shall be annexed to and form a part of the specifications for the work. Such fiscal officer shall file with the department having jurisdiction such schedule of wages to the time of the commencement of the advertisement for bids on all public works pro-

posed to be constructed. The term 'contract' as used in this subdivision also shall include reconstruction and repair of any such public work."

Subdivision 3-a of the same section further provides: " It shall be the duty of the department of jurisdiction as defined in this section to ascertain from the plans and specifications the classification of workmen, mechanics and laborers to be employed on such project. Such department shall file with the fiscal officer, as defined in this section, the classification of workmen, mechanics and laborers to be employed upon such public works project, together with a statement of the work to be preformed by each such classification. From such statement it shall be the duty of the fiscal officer to make a proper classification of such workmen, mechanics and laborers and to make a determination of the schedule of wages to be paid therefor. The contractor and every sub-contractor on public works contracts shall post in a prominent and accessible place on the site of the work a legible statement of all wage rates as specified in the contract to be paid for the various classes of mechanics, workingmen, or laborers employed on the work. The department of jurisdiction as herein referred to shall be the department of the State, board or officer in the State, or municipal corporation or commission or board appointed pursuant to law, whose duty it is to prepare or direct the preparation of the plans and specifications for a public work project."

The fiscal officer as defined is the State Industrial Commissioner. The department of jurisdiction in this instance was the State Department of Public Works.

The question here is whether the State of New York, having failed to include the classification of waterproofers in its specifications, could afterwards revise its list and insist upon the claimant's paying certain rates of wages to men employed by it in that occupation. Clearly, waterproofing was the work to be done under the contract. Under the statute it was the duty of the State Industrial Commissioner to ascertain and determine prior to the time of advertisement for bids the schedule of wages to be paid to workmen doing that work. Likewise it was the duty of the Department of Public Works to file with the State Industrial Commissioner the classification of such workmen together with a statement of the work to be performed by them.

It does not appear that either of these duties was performed by the public officer upon whom it devolved. In our opinion the claimant had the right to believe that this duty had been performed. As the occupation of waterproofing was not listed and as no rate

of wage for it was given the claimant had the right to assume that there was no rate fixed which it would be required to pay. Undoubtedly claimant would have submitted a higher bid if the situation had been otherwise. When, after the contract had been awarded and the claimant had begun its work, the State compelled claimant to pay the higher rate the contract was breached although the State proceeded under the authority of the Labor Law. The provision to the effect that if after the awarding of the contract it became necessary to employ any person in a trade or occupation not therein listed such person should be paid a minimum wage rate approved by the State Director is not available to the State as a defense. The purpose of that paragraph was solely to provide protection for trades or occupations not originally contemplated by the contract itself.

Claimant is entitled to recover such damages as naturally flow from the State's breach of its contract. The amount to be recovered here should be the extra cost imposed upon the claimant by reason of paying the increased wage. The job payroll sheets disclose that the men listed as "Skilled Appliers" worked 9,063 hours waterproofing. As claimant expected to and did at the beginning pay these men one dollar per hour it follows that the award here should be on the basis of 9,063 hours at twenty-eight and one-eighth cents per hour. To this should be added the cost of compensation insurance and also percentages for overhead and profit. We find the claimant entitled to an award of $3,238.45.

Claimant demands a larger sum upon the theory of additional costs proportioned to the hours of labor originally estimated by it in its three classifications of "Skilled Appliers" at one dollar per hour, "Intermediate Appliers" at seventy-five cents per hour and laborers at fifty-five cents per hour. But it seems to us that the payroll sheets which are in evidence are conclusive in this regard and that we may safely rely upon them in determining the amount to which claimant is entitled.

An order may be submitted denying the State's motion to dismiss the claim and a decision should be prepared in accordance with the foregoing determination.

BARRETT, P. J., concurs.