In the Matter of ARMCO DRAINAGE & METAL PRODUCTS, INC., Petitioner, against THOMAS F. MOORE, JR., as First Deputy Industrial Commissioner, et al., Respondents.

First Department, December 31, 1954.

*Robert P. Knapp, Jr.,* of counsel (*Breed, Abbott & Morgan,* attorneys), for petitioner.

*Philip Watson* of counsel (*Wendell P. Brown* and *Samuel A. Hirshowitz* with him on the brief; *Nathaniel L. Goldstein, Attorney-General*), for respondents.

*Edmond B. Butler* of counsel (*O'Connell & Butler,* attorneys), for the International Hod Carriers' Building and Common Laborers' Union of America, *amicus curiæ.*

BREITEL, J. In this article 78 proceeding, petitioner seeks to annul the determination of the State Industrial Commissioner fixing prevailing rate of wages pursuant to section 220 of the Labor Law. Petitioner is a contractor who was engaged, under written contract, to build a tunnel in Broome County as part of a State project. Involved is the classification and rate of pay of men who worked in digging the tunnel. The contractor has contended that the men were used as common laborers and were so paid, in accordance with the schedule attached to the specifications. The State Industrial Commissioner has found that the nature of the work was that of skilled tunnel work and fixed prevailing rates of wages in several classifications and at several rates ranging from miner to tunnel laborer.

In our view, the determination must be annulled because the procedure followed did not conform to the statute and the matter should be remitted to the State Industrial Commissioner for such further proceedings as may be appropriate. As a consequence, it will not be necessary to consider the nature of the work involved in this project.

Section 220 of the Labor Law provides that, in connection with all public works, the prevailing rate of wage paid to a majority of workmen in the same trade or occupation in a locality shall be paid to workers on public projects. " Locality " is defined as " the town, city, village or other civil division of the state wherein the physical work is being performed ". (Subd. 5, par. b.) It is further provided that, where there are no such workmen in the locality, the first larger civil division in which such workmen are employed shall be used as a base. It is then provided as follows: " The first larger civil division shall be determined in the following order: (1) city or village, (2) township, (3) county, (4) the contiguous counties to the county in which the physical work is to be performed."

In this proceeding, the State Industrial Commissioner found no workmen engaged in the same trade or occupation in Broome County nor, he asserted, did he find such anywhere in the State except in the city of New York in connection with two projects in Queens and Bronx Counties. He, therefore, used Queens and Bronx Counties as the base. But he was powerless to so do. The statute is quite clear. It permits the State Industrial Commissioner to use a ring of contiguous counties, as part of a larger civil division of the State, in which to ascertain the existence of a prevailing rate of wage. It does not, however, permit him to rove through ever-widening circles of nonadjoining counties, and, by no means, does it permit him to use the

entire State as an area for making his determination. The use of familiar and constrictive terms like "locality", "civil division", and "contiguous" is completely inconsistent with and contradictory of the notion that it was contemplated that a prevailing rate of wage should be determined, in any instance, on a State-wide unit basis. For this reason the determination should be annulled.

The State Industrial Commissioner used a further procedure for which there is no basis in the statute. Evidently recognizing that wage levels in Queens and Bronx Counties might not be comparable to those in Broome County, he used a proportional method for determining the prevailing rate of wage to apply to the Broome County tunnel workers. He first determined what was the prevailing rate of pay in the several counties for common laborers. He then took the wage differential in Queens and Bronx Counties between common laborers and tunnel workers and applied that differential proportionately to the Broome County figure for common laborers. There is no authority for application of such a method and its use perhaps suggests the artificiality of the approach by the State Industrial Commissioner in reaching his conclusion in this proceeding.

It has been suggested that the determination should be annulled and the rate-of-wage proceeding finally dismissed because of another circumstance that existed in this case. Under section 220 of the Labor Law, the department having jurisdiction of a public work project has the responsibility for annexing to the specifications a schedule of classification of workers, together with the respective prevailing rates of pay. In the instant proposals, the schedule did not refer to tunnel workers, although it did contain a classification of common laborers. It was only after the project was well under way and, of course, after the contract-letting, that the rate-of-wage proceeding was initiated to reclassify the tunnel workers and fix the higher rate of pay.* It is urged that the statute does not authorize any such proceeding once the contract has been let and executed. The contract is not included in the record, but the statute requires that it contain the provision that the contractor undertakes to pay the prevailing rate of wage (Labor Law, § 220, subd. 3). In any event, the statute is for the benefit of workmen and those affected may have a remedy against the contractor. (Cf. *Fata* v. *Healy Co.*, 289 N. Y. 401; *Filardo* v. *Foley Bros.*, 297 N. Y. 217, 225, and *Schlein* v. *Metzger*, 275 App. Div. 340, 343.)

---

* There is evidence in the record that the schedules provided that classifications could be added at a later time.

Hence, if the workmen have a cause of action it would remain inchoate unless there were a procedure for fixing the prevailing rate of wage. Under the statute an administrative procedure is mandated. There need be no infirmity in permitting such determination after the contract-letting rather than before, albeit, in the first instance the only proper and the required procedure is to annex the prevailing rate of wage schedule to the specifications. But the question is whether the workmen for whose benefit the statute was written should be debarred from relief because of the failure of the State Industrial Commissioner or of the department of jurisdiction — the State Department of Public Works. Moreover, in some circumstances the contractor may very well be responsible, either deliberately or unintentionally, in misleading the State Department of Public Works as to the necessary classification of workmen to be used on the project. For all we know, that may or may not have been the case here. There is precedent for such classification and prevailing-rate-of-wage determination to be made after the contract-letting. A case in point is that of *Building Chemicals Corp.* v. *State of New York* (164 Misc. 407). In that case, the classification and prevailing rate of pay was determined by the State Industrial Commissioner pursuant to section 220 of the Labor Law after the letting and execution of the contract. The Court of Claims held that the employer was entitled to recover from the State for the labor costs it sustained in excess of the rates of pay fixed in the schedules attached to the specifications.

Before disposing of this matter we should note that the statute contemplates that classifications of jobs and the fixing of prevailing wages will be determined in advance of letting the contract, and for the very good reason that the governmental unit and the contractor should know where they stand before the commitment for the work. These arrangements should not be disturbed except for compelling reasons. But the jurisdiction necessarily exists to correct inequities.

The statute, of course, makes distinct and separate provision for the classification of workmen and for the fixing of the prevailing rate of wage. In the first instance, the department of jurisdiction, in this case the Department of Public Works, makes the classification of workmen and files it with the Industrial Commissioner, together with a statement of the work to be performed by each such classification (Labor Law, § 220, subd. 3-a). Thereupon, and from such statement, it is the duty of the Industrial Commissioner to make a proper classification and to fix the wages. The statute, therefore, confers upon two agencies the

duty of making classifications. The initial duty rests in the department of jurisdiction, and then, evidently, it is subject to review by the Industrial Commissioner who is obligated to make " proper " classifications. (Classification is a process essential to the fixing of a prevailing rate of wage. While the Constitution refers to " rate of wages prevailing in the same trade or occupation " [art. I, § 17], and does not use the term " classification ", a determination of " same trade or occupation " is a process of classification, essential and preliminary to determining the prevailing rate of wage in such trade or occupation. A prevailing rate of wage would be meaningless unless it is fixed as a characteristic of a classified trade or occupation.) It is clearly contemplated, and it is their duty, that the public departments effect classifications and fix wages in advance of the letting of the contract, but these precautions and requirements, designed to protect the contractor, among others, should not act as a bar to remedies of workmen in effecting reclassification, payment and recovery of the prevailing rate of wage to which they are entitled by law. Moreover, in the absence of any clear requirement of statute, we should not inject a rigidity, which does not now exist, in the power of administrative agencies to perform the duties incumbent upon them. This case presents a situation in which a balance of inconvenience must be struck. On the one hand, there is dislocation to a contractor who faces a greater financial burden than he anticipated, and, on the other hand, there is the loss to workmen who have been deprived of their proper classification and pay. The deprivation to the workmen may be accomplished just as facilely by an erroneous classification as it can be by an erroneous determination of the prevailing rate of wage.

Since the record shows that there were other tunnel projects in counties adjacent to Broome County, which may or may not be relevant, but which the State Industrial Commissioner excluded from consideration for various reasons, it would be desirable that this prevailing-rate-of-pay proceeding be remitted to him for re-examination in accordance with the views expressed herein. We cannot say at this time that the dismissal of the rate-of-wage proceeding should be final.

Accordingly, the petition to annul the determination of the State Industrial Commissioner should be granted and the matter remitted to him for such further proceedings as may be appropriate, consistent with the views expressed in this opinion. Settle order.

CALLAHAN, J. (dissenting in part). This appeal presents a question as to the nature and extent of the power conferred by section 220 of the Labor Law providing for the classification of trades or occupations to be used in performing public work.

The power of classification was first added to the law by chapter 300 of the Laws of 1935 which amended section 220 of the Labor Law by adding new subdivisions 3-a to 3-d. A reading of these subdivisions would indicate that the power of classification was intended to be exercised before the letting of contracts. Subdivision 3-a provides it shall be the duty of the department of jurisdiction to ascertain from the plans and specifications the classification of workmen, mechanics and laborers to be employed on State projects. Subdivision 3-b creates an advisory board to be appointed by the Governor to aid in the work of classification. Subdivision 3-d provides for the work of classification of occupations on public work " proposed to be constructed ".

The reclassifications complained of in the present proceeding all took place months after the letting of a contract.

The construction work covered by the contract was a section of highway which included a tunnel or culvert about 500 feet long and 8 feet in diameter to be used for the diversion of water to a river. The tunnel was minutely described in the plans and specifications upon which bids were obtained.

Prior to the letting of the contract and pursuant to section 220, a schedule had been prepared by the proper authorities setting forth the classes of labor to be used in performing the work. More than sixty trades or occupations were specified in this schedule and included was the position of " laborer ". The prevailing rate of wage for each classification was set forth. However, there was no specification of the trades to be used in any particular portion of the work except such as might be inferred from the nature of the work itself and the statement of the trade. At least, no particular skilled labor was specified as being required for the work of boring the tunnel.

After the letting of the main contract, a subcontract was let to the present petitioner who claimed that it pursued a method of boring a tunnel with the aid of metal protective sheathing known as liner plate that would permit the work to be performed by common labor. As it proceeded to do its work, complaints were made by labor unions contending that certain skilled mechanics should have been engaged to do the tunnel work. Included in those complaining was the Sandhog's Union.

The contractor pointed out that the tunnel work was being

done in free air and he insisted it could be and ordinarily was done by common labor. The authorities finally concluded that the work must be done by " miners " at $2.82 per hour as against $1.71 for laborers.

It was, in effect, conceded at the opening of the second hearing before the Industrial Commissioner that there had been no change in the conditions of the work after the letting of the contract, and that the attempted addition of classifications was due solely to a desire to satisfy the protests of the labor unions. The use of miners was not urged by the State as necessary for the proper boring of the tunnel or under any provision of the contract.

At the end of the schedule of classifications is a notation " Labor classifications not appearing on this rate sheet can be used only with the consent of the Superintendent of Public Works ". This has no application in the instant case, as there was a classification of " laborer ". The contract, though not in the record, is said to contain a provision also attached to the schedule of classifications " Any occupation not listed in the above schedule must be requested through the Department of Public Works from the Department of Labor." Again, this provision is inapplicable, because the occupation of " laborer " was listed, and the contractor had no need to request any new classification.

We thus have a situation where what is commonly known as a " jurisdictional dispute " was attempted to be settled by the intervention of the public authorities acting pursuant to section 220 of the Labor Law. They attempted to so settle the dispute by adding new classifications though no change had occurred in the work planned and without any contention by the State that the work would be improperly performed by laborers.

In my opinion, there was no authority under section 220 for the action taken here and none may be read into the section by inference.

Section 220 refers generally to the fixation of prevailing rates of wages. As the prevailing rate of wages may change from time to time during the performance of work, the power to fix said rates is a continuing one.

This is recognized in the statute as appears from the provisions found in subdivisions 6 to 9 of section 220 (see, also, *Matter of Cander Realty Corp.* v. *Andrews*, 239 App. Div. 618).

The classification of trades and occupations in performing public work was undoubtedly intended to be an aid to the fixation of prevailing rates of wages, but the power to classify is

a separate act not essentially part of the public policy (N. Y. Const., art. I, § 17) and its limitations as set forth in the statute must be respected.

If new work or a change in plans had been ordered, there might be some basis for inferring the power to make a new classification, but that was not the situation here. In performing the duty of classifying under this section, the public bodies that act, including the advisory board, do so without granting a hearing to the contractor. The settlement of jurisdictional disputes after the contract had been let clearly creates a situation where a contractor must have the right to be heard.

I do not think it was ever intended that these disputes be settled by the exercise of the power attempted here.

In *Building Chems. Corp.* v. *State of New York* (164 Misc. 407) it was held that where the State of New York failed to include the classification of waterproofing in its specifications that it could not revise its lists by adding such a trade without breaching the contract. It was said there that it was the duty of the authorities to ascertain and determine prior to the time of advertisement the schedule of wages to be paid the workmen and to file at that time the classifications of such workmen together with a statement of the work to be performed by them.

The present case is even a stronger one for the contractor in that there was a specification of a class of " laborer " that could perform the work, for all we know, in the manner in which the contract required.

There was one step taken in this proceeding which seems to have been within the power of the authorities, i.e., the increase of the scheduled prevailing rate for " laborer " from $1.71 an hour to $1.87 per hour. To that extent the public officials acted within the scope of their authority, but this determination seems to have been superseded by later ones.

While I agree with the decision of the majority to annul the determination of the respondents, I would limit any rehearing to the question of the prevailing rate of wages for the position of " laborer " only.

PECK, P. J., COHN and BOTEIN, JJ., concur with BREITEL, J.; CALLAHAN, J., dissents in part in opinion.

Determination of the State Industrial Commissioner annulled and matter remitted to him for such further proceedings as may be appropriate. Settle order.