Sylvester, J.
This motion to dismiss the claim for insufficiency arises out of a subcontract entered into by claimant for the construction of a tunnel as part of a State project in Broome County. The prime contract, as required by section 220 of the Labor Law, included a schedule of minimum hourly rates of pay which was also embodied in claimant’s subcontract. Claimant alleges that the only job classification and minimum rate of pay applicable to work in tunnels contained in the schedule was “ common laborer ” at $1.71 per hour. Claimant entered upon the construction of the tunnel on September 15, 1952, and completed the work on June 2, 1953.
On October 20,1952, the Industrial Commissioner of the State of New York established new and additional job classifications applicable to the tunnel work at rates in excess of $1.71 per hour; and, thereafter, established other job classifications at increased .rates of pay. Claimant was required to pay these increased rates of compensation, and now claims to have been damaged in the sum of $17,037.22.
For a second cause of action, the foregoing is restated with the further allegation that the action of the agents and officials of the State of New York in compelling claimant to pay the increased rates constituted unlawful and wrongful acts.
Subdivision 3 of section 220 of the Labor Law provides that the wages to be paid to workmen upon any public work shall *97 be not less than the prevailing rate for a day’s work in the same trade in the locality within the State where the work is performed. It i& required also that each contract for such work shall provide that any contractor, subcontractor or other person on such public work shall pay this prevailing rate.
The statute renders it incumbent upon the Industrial Commissioner to fix the minimum wages to be paid prior to the advertisement for bids, and the wage schedule so determined is required to be annexed to the specifications for the work. The duty of classifying the types of jobs required by the work is imposed upon the Department of Public Works. (Labor Law, § 220, subds. 3, 3-a.)
The Industrial Commissioner is further authorized either on his own initiative or on the basis of a verified complaint, to investigate the prevailing rate of wages in the locality within the State where any public work is being performed, to hold hearings thereon, giving notice to any person or corporation affected, and to render a determination which may be judicially reviewed by any aggrieved party. (Labor Law, § 220, subds. 7, 8.)
Claimant contends that the action of the State in establishing additional job classifications at increased rates of pay constitutes, in effect, a breach of contract for which the State is liable in damages. The State, on the other hand, contends that the statute expressly authorizes a revision of the prevailing rate of pay in a proper proceeding and that every contractor and subcontractor must take the risk of upward revisions of prevailing wage rates during the course of the work.
A similar claim was presented in Building Chemicals Corp. v. State of New York (164 Misc. 407) where the contract related to the waterproofing of buildings at the Pilgrim State Hospital. In that case, claimant had been notified to prepare a work schedule and analysis of labor and, in compliance therewith, had submitted schedules which included “ Skilled Appliers ” at $1 per hour, and “ Intermediate Appliers ” at 75^ per hour. Thereafter, claimant entered into a contract which contained a schedule of prevailing rates of pay fixed by the Industrial Commissioner under section 220 of the Labor Law which, however, failed to mention either waterproofers, skilled appliers or intermediate appliers.
Claimant then entered upon the work and paid skilled appliers the proposed rate of $1 per hour. Sometime later, claimant wrote the State calling attention to the fact that there was no provision in the schedule fixing the hourly wage rate for skilled *98 appliers and requesting that this wage rate be fixed. Pursuant to this request, claimant was directed to pay skilled appliers $1.28% per hour. Claimant paid the increased rate, including back pay to workmen previously employed at the lower rate and sued the State for the difference.
In rendering judgment for the claimant, this court pointed out that, under the Labor Law, it was the duty of the Department of Public Works and of the Industrial Commissioner to classify workmen and to fix the prevailing wage rate, which had not been done. This failure on the part of the State was held to constitute a breach of contract for which the claimant was entitled to recover damages. It was said by Byax, J. (pp. 410, 411):
“ Clearly, waterproofing was the work to be done under the contract. Under the statute it was the duty of the State Industrial Commissioner to ascertain and determine prior to the time of advertisement for bids the schedule of wages to be paid to workmen doing that work. Likewise it was the duty of the Department of Public Works to file with the State Industrial Commissioner the classification of such workmen together with a statement of the work to be performed by them.
“ It does not appear that either of these duties was performed by the public officer upon whom it devolved. In our opinion the- claimant had the right to believe that this duty had been performed. As the occupation of waterproofing was not listed and as no rate of wage for it was given the claimant had the right to assume that there was no rate fixed which it would be required to pay. Undoubtedly claimant would have submitted a higher bid if the situation had been otherwise. When, after the contract had been awarded and the claimant had begun its work, the State compelled claimant to pay the higher rate the contract was breached although the State proceeded under the authority of the Labor Law.”
Thus, recovery was permitted where job classifications and wage rates were revised following a breach of duty by the State to ascertain the material data at a prior time.
Here, there is no factual allegation in the pleading of any such breach of duty by the State. It is alleged merely that the original job classifications and wage rates were subsequently revised. For all that appears, the revision may have been within the authority expressly conferred upon the Industrial Commissioner by statute (Labor Law, § 220, subds. '7, 8).
In this connection, reference should be made to a prior proceeding instituted by the instant claimant nnder article 78 of *99 the Civil Practice Act seeking to set aside the revised job classifications and rates of pay here involved. (Matter of Armco Drainage & Metal Products v. Moore, 285 App. Div. 236.) There, the court, though it annulled the revised rates on the ground that the proper locality had not been used in making the determination, held that the Industrial Commissioner, in a proper case, had the right to revise wage rates subsequent to the letting of the contract, and remitted the matter to the Industrial Commissioner for further proceedings. The court said, per Breitel, J. (p. 241): “It is clearly contemplated, and it is their duty, that the public departments effect classifications and fix wages in advance of the letting of the contract, but these precautions and requirements, designed to protect the contractor, among others, should not act as a bar to remedies of workmen in effecting reclassifications, payment and recovery of the prevailing rate of wage to which they are entitled by law. Moreover; in the absence of any clear requirement of statute, we should not inject a rigidity, which does not now exist, in the power of administrative agencies to perform the duties incumbent upon them. This case presents a situation in which a balance of inconvenience must be struck. On the one hand, there is dislocation to a contractor who faces a greater financial burden than he anticipated, and, on the other hand, there is a loss to workmen who have been deprived of their proper classification and pay.”
It should also be pointed out that the contract here involved contained the following “ Special Notice ”: “ Labor classifications not appearing on this rate sheet can be used only with the consent of the Superintendent of Public "Works and then the rates to be paid will be given by the Superintendent of Public Works after advising with the State Department of Labor.”
Thus, the contract plainly provides for the contingency of additional job classifications and the fixing of appropriate wage rates.
In the protection of workmen who are entitled to the correct prevailing rate of wage, the Industrial Commissioner must, of necessity, be vested with a flexible discretion. Whether the revision is brought about by reason of actionable neglect on the part of the Industrial Commissioner or the Department of Public Works (e.g., failure to perform duty), or whether it be attributable to circumstances over which there is no control, is necessarily a question of fact in each case. The inadequacy of the original classification may have been attributable to the *100 fault of the contractor. The pleading is not enlightening on that score. This possibility was suggested in Matter of Armco Drainage & Metal Products v. Moore (supra, p. 240) where it was said: “ Moreover, in some circumstances the contractor may very well be responsible, either deliberately or unintentionally, in misleading the State Department of Public Works as to the necessary classification of workmen to be used on the project. For all we know, that may or may not have been the case here.”
The instant claim is, therefore, clearly distinguishable from that presented in Building Chemicals Corp. v. State of New York (supra). There, the contractor submitted to the State, at its request, a detailed specification of the work required and expressly designated the job of skilled applier at $1 per hour. The schedule prepared by the Industrial Commissioner, however, failed to mention skilled appliers. The breach of duty by the State was therefore established. No such showing is made by the instant pleading.
It is true that the second cause of action alleges generally that the additional job classifications were illegal. This merely conclusory allegation is deemed insufficient in the absence of allegations of fact from which the illegality can be made to appear (Gerdes v. Reynolds, 281 N. Y. 180; Talcott v. City of Buffalo, 125 N. Y. 280; Knapp v. City of Brooklyn, 97 N. Y. 520).
Since the claim is insufficient, the question of privity is not presented. On this point it might be stated that the statutory duty here involved is manifestly intended for the protection of subcontractors as well as contractors. The subcontractor would, therefore, also come within the protection of the duty imposed upon the State and would not be without remedy in a proper case (Lawrence v. Fox, 20 N. Y. 268; Seaver v. Ransom, 224 N. Y. 233; Filardo v. Foley Bros., 297 N. Y. 217, revd. on other grounds, 336 U. S. 281). The motion is, therefore, granted and the claim is dismissed, with leave to amend within thirty days after the service of the order to be entered hereon.