In the Matter of HULL-HAZARD, INC., et al., Petitioners, v LILLIAN ROBERTS, as Commissioner of Labor of the State of New York, Respondent, and UPSTATE NEW YORK COUNCIL OF OPERATING ENGINEERS, Intervenor-Respondent.

Third Department, July 16, 1987

**APPEARANCES OF COUNSEL**

*Bryant, O'Dell & Basso (LaVerne F. O'Dell* of counsel), for petitioners.

*Robert Abrams, Attorney-General (Andrew Schulz* of counsel), for respondent.

*Blitman & King (Donald T. Oliver* of counsel), for intervenor-respondent.

**OPINION OF THE COURT**

MAHONEY, P. J.

Petitioner Hull-Hazard, Inc. entered into a public works contract with the Department of Transportation for the painting and rehabilitation of several bridges along Interstate Route 81 outside the City of Syracuse in Onondaga County. In conjunction with the project, Hull-Hazard hired Albert Redmond. Redmond subsequently filed a complaint with the Department of Labor alleging that he was not paid ironworkers' wages for work performed in tying steel rods. After an investigation, the Department of Labor charged Hull-Hazard with underpayment of wages and with improperly computing overtime for its employees. After a hearing, respondent concluded that Hull-Hazard had willfully underpaid wages to Redmond and another employee. Further, respondent found that petitioner Hull Corporation, because of its close affiliation with Hull-Hazard, should be held jointly liable with Hull-Hazard.

Petitioners commenced this CPLR article 78 proceeding seeking to set aside respondent's determination. Supreme Court ruled on a question of statutory construction and transferred the remainder of the proceeding to this court. Petitioners appeal from Supreme Court's ruling.

■ Initially, we note that, where a substantial evidence question is presented which necessitates transfer to this court, Supreme Court is authorized to pass on objections in point of law *(see,* CPLR 7804 [g]). An objection in point of law is not any legal issue raised in the proceeding, but is limited to threshold objections of the kind listed in CPLR 3211 (a) which are capable of disposing of the case without reaching the merits *(see, Matter of Hop-Wah v Coughlin,* 118 AD2d 275, *revd on other grounds* 69 NY2d 791). Here, no objections in point of law were interposed. Thus, there was no authority for Supreme Court to pass on the issue of statutory construction before transferring the proceeding to this court.

■ Turning to the merits, petitioners challenge respondent's conclusion that they improperly computed overtime pay for its employees. Labor Law § 220 (2) states that: "Each contract to which the state or a public benefit corporation or a municipal

corporation or a commission appointed pursuant to law is a party and which may involve the employment of laborers, workmen or mechanics shall contain a stipulation that no laborer, workman or mechanic in the employ of the contractor * * * shall be permitted or required to work more than eight hours in any one calendar day or more than five days in any one week". The statute goes on to provide that a contractor may obtain a dispensation permitting work during additional hours or days, but states that: "Whenever such a dispensation is granted, all work in excess of eight hours per day and five days per week shall be considered overtime work, and the laborers, workmen and mechanics performing such work shall be paid a premium wage commensurate with the premium wages prevailing in the area in which the work is performed" (Labor Law § 220 [2]). Hull-Hazard received dispensation, but admits that its policy was to pay overtime on the sixth day of work only if the employee worked 40 hours for the week. The language of the statute requiring overtime pay for "all work in excess of eight hours per day *and* five days per week" (emphasis supplied) would appear to support Hull-Hazard's position. However, the lead part of the statute prohibiting overtime defines the term as "more than eight hours in any one calendar day *or* more than five days in any one week" (emphasis supplied). Under this definition, Hull-Hazard's policy would be unlawful. Statutes should be construed in a manner which furthers their objective. The overtime pay provision of Labor Law § 220 (2) was obviously intended to complement the primary provision that overtime would not be allowed absent special dispensation. This, along with the fact that the statute was intended to benefit the worker *(see, Austin v City of New York,* 258 NY 113, 117; *Matter of Armco Drainage & Metal Prods. v Moore,* 285 App Div 236, 239), convinces us that respondent properly found that Hull-Hazard's overtime policy violated Labor Law § 220 (2).

Next, respondent found that Hull-Hazard violated Labor Law § 220 (3) which requires that workers on public works projects be paid not less than "the prevailing rate of wages", which term is defined as "the rate of wage paid in the locality * * * by virtue of collective bargaining agreements between bona fide labor organizations and employers of the private sector, performing public or private work" (Labor Law § 220 [5] [a]). Redmond and another individual were hired as laborers. However, they contended that they were doing some job duties normally assigned to ironworkers, specifically the tying

of steel rods. The ironworker rate is higher than the laborer rate. The evidence indicates that the two workers were paid for some hours at the laborer rate and for other hours at the ironworker rate. Both sides offered proof on the issue of whether the job of tying steel rods on a renovation project is performed by laborers or ironworkers. It was for respondent to weigh the contradictory evidence, and she chose not to credit the testimony and evidence offered by Hull-Hazard. Since there was substantial evidence to support respondent's determination that the two workers should have been paid at the ironworker rate, her conclusion that Hull-Hazard violated Labor Law § 220 (3) cannot be disturbed.

■ ■ Next, Hull-Hazard claims that respondent erred in finding the violations to be willful. Such finding is significant because a contractor who has been found in willful violation of the statutes at issue herein on two occasions in a six-year period becomes ineligible to bid on a public works contract for five years (Labor Law § 220-b [3] [b]). We have recently held that the term willful " 'does not imply a criminal intent to defraud, but rather requires that [petitioner] acted knowingly, intentionally or deliberately' " *(Matter of Cam-Ful Indus. v Roberts,* 128 AD2d 1006, quoting *Matter of Valvo [Ross],* 83 AD2d 344, 346, *affd* 57 NY2d 116). Regarding the overtime violation, as discussed earlier, Hull-Hazard's policy was technically in compliance with the overtime provision of Labor Law § 220 (2). It was only after construing the statute as a whole and considering the purpose of the statute that we concluded that Hull-Hazard violated the statute. Thus, the violation can hardly be said to have been willful and respondent's determination otherwise must be set aside. Respondent also found that Hull-Hazard knew or should have known that the two employees should have been paid at the ironworker rate. The evidence, including the fact that Hull-Hazard paid the employees at the ironworker rate for some hours, supports this conclusion.

■ Finally, respondent found a corporation named "Hull Corporation" to be jointly liable with Hull-Hazard. Hull-Hazard was created in 1967 and was owned by Hazull Corporation which, in turn, was owned by Robert Hazard and John Hull, and their families, and Lowell Wheeler. About 1983, Hull and Hazard decided to pursue different business ventures, with Hull choosing to remain in the highway construction business. Hull-Hazard stopped bidding on contracts in 1983. Hull formed Hull Corporation in 1984. Steven Infanti owns 50% of

Hull Corporation, Hull owns 49.5% and Hull's son also owns stock. Respondent concluded that Hull Corporation was the successor to Hull-Hazard and that it would frustrate the statute if an employer could simply change its corporate name and thereby be allowed to again bid on public contracts. Respondent offers no legal support for this conclusion other than analogy to Federal law. However, while the analogous Federal statute provides that the bidding prohibition extends to "any firm, corporation, partnership, or association in which such persons or firms have a controlling interest" (41 USC § 37), Labor Law § 220-b (3) (b) contains no such language. Rather, the statute restricts the bidding prohibition to "such person or corporation" as was found guilty of the violation. Certainly if a corporation simply changed its name or made minor changes in its ownership, such action could not be allowed to frustrate the bidding prohibition. However, the evidence in this case indicates that 50% of Hull Corporation is owned by Infanti, who had no ownership interest in Hull-Hazard. Respondent considered evidence of common employees and officers. However, Labor Law § 220-b (3) does not authorize extension of the bidding prohibition to successor corporations because of such factors. Since a significant portion of Hull Corporation was owned by an individual who had no ownership interest in Hull-Hazard, it cannot be said that a mere name change was involved. Accordingly, respondent was without authority to impose joint liability upon Hull Corporation.

LEVINE, J. (concurring in part and dissenting in part). I dissent from that portion of the majority's decision that annulled respondent's determination holding petitioner Hull Corporation jointly liable with Hull-Hazard, Inc., the employer when the violations which are the subject of the instant proceeding occurred. Labor Law § 220 is broadly remedial and protective of the rights of workers guaranteed by NY Constitution, article I, § 17, and is to be liberally construed to effectuate those purposes (see, Austin v City of New York, 258 NY 113, 117; Matter of Armco Drainage & Metal Prods. v Moore, 285 App Div 236, 239). There was ample evidence in the record establishing the totally interlocking relationship between Hull Corporation and Hull-Hazard. Hull Corporation was created for the specific purpose of succeeding to Hull-Hazard's construction business. Fully one half of Hull Corporation's voting shares of corporate stock is owned by principal shareholders of Hull-Hazard. The remaining one half is held

by a person who served as president of Hull-Hazard when the violations occurred. The major corporate officers of Hull Corporation served in the same capacities with Hull-Hazard. In addition, 19 of the 25 top managerial employees of Hull Corporation held the same or similar positions with Hull-Hazard. The two corporations had joint employee pension and health plans. Hull Corporation availed itself of the resources of Hull-Hazard, including its good will and reputation as an experienced contractor in the heavy construction field.

It seems self-evident to me that, under the foregoing facts, Hull Corporation took over Hull-Hazard's operations with the same knowledge that Hull-Hazard had of the existence of the complaints herein. To permit a successor corporate employer, such as Hull Corporation, to escape all liability for the Labor Law § 220 violations of its predecessor, under the circumstances presented here, would seriously undermine effective implementation of the remedial and protective purposes of that law. By way of analogy, under Federal administrative law, the imposition of liability against a successor corporate employer for unfair labor practices under the similarly remedial and protective National Labor Relations Act (29 USC § 151 *et seq.)* would be upheld on the same facts *(see, Evans Servs. v National Labor Relations Bd.,* 810 F2d 1089; *National Labor Relations Bd. v Jarm Enters.,* 785 F2d 195; *see also, Golden State Bottling Co. v National Labor Relations Bd.,* 414 US 168).

Accordingly, I find nothing irrational, arbitrary or capricious in the imposition of joint liability against Hull and would confirm that determination.

CASEY, YESAWICH, JR., and HARVEY, JJ., concur with MAHONEY, P. J.; LEVINE, J., concurs in part and dissents in part and votes to confirm in an opinion.

Determination modified, on the law, without costs, by annulling so much thereof as found the violation of Labor Law § 220 (2) to have been willful and found Hull Corporation to be jointly liable with Hull-Hazard, Inc., and, as so modified, confirmed.