Alexander, J.
(concurring in part and dissenting in part). Although I join the majority to affirm the Appellate Division judgment insofar as it confirmed the determination of respondent, Commissioner of Labor, finding violations of the overtime pay and prevailing wage provisions of the Labor Law, I cannot agree that liability was improperly imposed upon Hull Corporation. In my view, the imposition of joint liability on petitioners Hull-Hazard, Inc. (Hull-Hazard) and Hull Corporation (Hull Corp) is amply supported by evidence in the record, and should be upheld as a reasonable application of the Labor Law by the agency specifically charged with the responsibility of administering the statute (see, Matter of Colt Indus. v New York City Dept. of Fin., 66 NY2d 466, 471; Matter of Howard v Wyman, 28 NY2d 434, 438).
*903 The record evidence establishes that Hull-Hazard, created as a highway and building construction business in 1967, was owned by the Hazull Corporation which, in turn, was owned by, among others, Robert Hazard and John Hull — the founders of Hull-Hazard. In 1983 — the year that Hull-Hazard contracted with the Department of Transportation to perform the work at issue here, involving the painting and rehabilitation of bridges along Interstate Route 81 — the two men decided to pursue different business ventures, with Hazard leaving to form a separate corporation specializing in real estate development and commercial building construction. Hull-Hazard stopped bidding on public contracts, but it continued to perform on contracts already granted to it throughout 1984, the period during which the subject violations occurred. Hull remained in the highway construction business and, in March 1984, while Hull-Hazard was performing the 1-81 construction project, he formed Hull Corp.
Fifty percent of Hull Corp’s stock is owned by Hull and his son, with the remaining 50% owned by Steven Infanti, who had been president of Hull-Hazard. Infanti immediately became the president of the new Hull Corp, and continued to function as president of Hull-Hazard throughout 1984. Hull, who had been a former president of Hull-Hazard, as well as treasurer and chairman of the board of that corporation, became chairman of the board of Hull Corp. According to his testimony, Hull also acted as project manager of the 1-81 project, assuming ultimate responsibility for the work performed. Infanti also was responsible for the 1-81 project in his dual capacity as president of both Hull-Hazard and Hull Corp. As found by the Hearing Officer, Hull Corp adopted the overtime policy of Hull-Hazard, and a majority of the administrative and salaried employees of the former were also employees of the latter. Additionally, 19 of the 25 top managerial employees of Hull Corp held the same or similar positions with Hull-Hazard. Even the health and pension plans of the two corporations were identical, and were developed by Hull-Hazard with the assistance of accountants and attorneys retained by that corporation. It further appears that the availability of Hull-Hazard’s employees and resources enabled Hull Corp to bid on public contracts even prior to the company’s formation, and there was evidence that Hull Corp relied on Hull-Hazard’s 17 years of experience as a contractor in the heavy construction field in securing construction work.
Based on this overwhelming evidence demonstrating the *904 "corporate identity” of Hull-Hazard and Hull Corp, respondent held the two corporations jointly liable for violations of the overtime pay and prevailing wage provisions of the Labor Law (Labor Law § 220 [2], [3]). The Appellate Division, however, annulled this aspect of the Commissioner’s determination. Construing the bidding prohibition of Labor Law § 220-b (3) (b) — barring a "person or corporation” from bidding on public work contracts if found to have willfully failed to pay prevailing wages and supplements on two occasions within a consecutive six-year period — the court concluded that the statute does not permit imposition of liability on a successor corporation where there has been more than just a change in the name of the corporation or a minor change in ownership. The Appellate Division held that, inasmuch as Infanti, as a 50% owner of successor Hull Corp, had no ownership interest in Hull-Hazard, the imposition of joint liability was not authorized by the statute. The majority adopts this conclusion as a correct construction of the Labor Law. I respectfully disagree and accordingly, dissent.
The fact that the remedial provisions of Labor Law § 220 are directed at the "person or corporation” that committed the particular violation does not foreclose imposing liability on a successor corporation where the evidence demonstrates the completely interlocking relationship between the two entities. Indeed, enforcement provisions — such as the bidding prohibition provision discussed by the Appellate Division— that refer to a corporation’s past employment practices in fixing a particular penalty would be seriously weakened if a superficial change in corporate identity were permitted to shield a successor corporation from liability (see also, Labor Law § 220 [8]; § 220-b [2]). We have acknowledged that the corporate form sometimes may be disregarded where it is necessary to achieve equity, or where it "is essential to the end that some accepted public policy may be defended or upheld” (Berkey v Third Ave. Ry. Co., 244 NY 84, 95 [Cardozo, Ch. J.]; see, Billy v Consolidated Mach. Tool Corp., 51 NY2d 152, 163). The provisions of Labor Law § 220 are broadly remedial in nature, reflecting "an attempt by the State to hold its territorial subdivisions to a standard of social justice in their dealings with laborers, workmen and mechanics” (Austin v City of New York, 258 NY 113, 117 [Cardozo, Ch. J.]). Indeed, we have repeatedly held that the statute must be "construed with the liberality needed to carry out its beneficent purposes” (Bucci v Village of Port Chester, 22 NY2d 195, 201; Matter of *905 Gaston v Taylor, 274 NY 359, 364; Austin v City of New York, 258 NY 113, 117, supra). Moreover, the Commissioner of Labor is given broad authority to enforce the provisions of the Labor Law and "may issue such orders as [she] finds necessary directing compliance with any provision” (Labor Law § 21 [1]). In light of the protective nature of the legislation, and the expansive authority conferred upon the Commissioner, the mere corporate reshuffling between Hull-Hazard and Hull Corp should not be permitted to impede enforcement of the statute.
As pointed out above, there is an abundance of evidence in the record demonstrating the extremely close connection between the two corporations: Hull Corp converted staff and resources of Hull-Hazard to its own use and benefit; Hull Corp relied upon the corporate reputation it developed as Hull-Hazard; Hull Corp’s pension and health and welfare plans were developed and paid for by Hull-Hazard; Hull Corp’s overtime policy was identical to that of Hull-Hazard; and both corporations shared corporate officers and counsel. Additionally, the two major shareholders of Hull Corp, Hull and Infanti, were responsible for establishing the employment policy of Hull-Hazard and overseeing the 1-81 construction project — Hull, in his capacity as project manager and part owner of Hull-Hazard, and Infanti, in his capacity as Hull-Hazard’s president. The fact that Infanti did not have any ownership interest in Hull-Hazard is not determinative since he clearly was in a position to know about the subject violations, and he admitted responsibility for the project. In these circumstances, the imposition of joint liability cannot be said to be arbitrary or irrational; rather, it must be viewed as a reasonable application of the statute to the evidence adduced at the hearing.
In adopting the reasoning of the Appellate Division, the majority apparently concedes that "if a corporation simply changed its name or made minor changes in its ownership, such action could not be allowed to frustrate” the statute’s remedial provisions (Matter of Hull-Hazard v Roberts, 129 AD2d 348, 353). Clearly, the same should be true where, as here, a successor corporation so interlocks with its predecessor that they are, for all relevant purposes, the same corporate entity (cf., Golden State Bottling Co. v National Labor Relations Bd., 414 US 168 [upholding imposition of successor liability for unfair labor practice under section 10 (c) of the National Labor Relations Act (29 USC § 160 [c])]). Accordingly, *906 I would reverse so much of the Appellate Division judgment as annulled the Commissioner’s determination holding Hull-Hazard and Hull Corp jointly liable.
Judgment affirmed, etc.