In the Matter of Twin State CCS Corporation, Petitioner, v Lillian Roberts, as Commissioner of Labor of the State of New York, Respondent.

Third Department, February 12, 1987

## APPEARANCES OF COUNSEL

*Roland & Fogel (Keith J. Roland* and *Emilio A. F. Petroccione* of counsel), for petitioner.

*Robert Abrams, Attorney-General (Karen Honeycutt, Carlin Meyer* and *Jane Lauer Barker* of counsel), for respondent.

## OPINION OF THE COURT

WEISS, J.

Petitioner, a firm engaged in the design, programming and installation of telecommunications systems, was awarded a contract to install new telecommunications equipment in the Clinton County Government Center. Although the request for bid documents issued by the county did not contain a copy of the prevailing rate schedule (hereinafter the PRS) for wages within the locality, petitioner was given, and acknowledged the receipt of, a copy of the PRS on July 6, 1984 (after it received notice of the award) and of an addendum to the PRS on July 13, 1984. After completion of the contract work in which petitioner's usual wage rates were paid, the Department of Labor audited its wage records and found an underpayment of wages and supplemental benefits totaling $8,913. Following a hearing, respondent adopted the findings of the Hearing Officer and issued an order and determination assessing petitioner with a total underpayment of $8,608.96 and directing restitution. This CPLR article 78 proceeding ensued.

Petitioner's first argument, that it was released from the mandates of Labor Law § 220 (3) because the PRS was not attached to or made part of the bid specifications, is without merit. This court has recently held that "[r]espondent's determination to enforce current prevailing wage rates after a contract is let is consistent with the language of present Labor Law § 220 and with the long-standing public policy of this State and settled judicial application of that policy in statutory form" *(Matter of General Bldg. Contrs. v Roberts,* 118 AD2d 173, 176). Petitioner's reliance upon *Matter of Armco Drainage & Metal Prods. v Moore* (285 App Div 236) is misplaced. There, the court annulled the determination of the State Industrial Commissioner because an erroneous methodology was utilized to determine the prevailing wage rate. The

court, however, held that "jurisdiction necessarily exists to correct inequities" *(supra,* at p 240) and the failure of the public departments to fix wages in advance of contract-letting should not act as a bar to recovery by workmen of prevailing wage rates to which they are entitled as a matter of law *(supra,* at pp 240, 241). Moreover, petitioner's contention that forfeiture of its $20,000 bid bond would occur if it withdrew its bid is incorrect. The bid was required to be held firm for 90 days following the bid opening on March 19, 1984, during which period bond forfeiture could occur upon bid withdrawal. However, at the time petitioner acknowledged receipt of the PRS on July 6, 1984, prior to contract signing (after the 90-day period), it could have withdrawn its bid without penalty.

We similarly find unpersuasive petitioner's arguments that the contract was not "public work" to which Labor Law § 200 applies. Reliance upon *Matter of Erie County Indus. Dev. Agency v Roberts* (94 AD2d 532, *affd* 63 NY2d 810) and *Matter of Penfield Mechanical Contrs. v Roberts* (119 Misc 2d 105, *affd* 98 AD2d 992, *affd* 63 NY2d 784) is misplaced. Both of those cases held that private construction projects financed through industrial development agency bonds were not "public work" for the purposes of Labor Law § 220. Neither the fact that a public agency held title to the project nor that it was accorded tax exemptions transformed what was essentially a private venture into something that might be deemed public. It was reasoned that the public purpose of the financing scheme should not be confused with the purely private purpose of the venture itself, its structure and operation, and that, accordingly, the prevailing wage rate requirement of Labor Law § 220 was not applicable *(Matter of Erie County Indus. Dev. Agency v Roberts, supra,* p 540). The financing vehicles authorized by and provided in the General Municipal Law to provide industrial development bonds to encourage and facilitate private sector development did not effect the change of "private work" into "public work" *(supra).* Here, unlike the foregoing cases, the telephone system installation was in public buildings for public use.

We similarly reject petitioner's contention that *Matter of Exley v Village of Endicott* (51 NY2d 426) compels a different result. There, the Court of Appeals considered whether an agreement for the acquisition of certain telephone terminal systems by a municipality without public bidding violated a competitive bidding statute (General Municipal Law § 103). In

*Exley,* unlike the situation at bar, title to the telephone interconnect system remained in New York Telephone Company which leased the equipment under a "two-tier" rate, one part of which applied to the cost of the equipment provided and the other to the charges for operation of the entire phone system. The court held that this particular agreement was neither a public work project nor a purchase contract, both of which required public bidding because of the amounts of money involved (General Municipal Law § 103). The court rejected classifying the installation as public work because the work of installing equipment was not a substantial aspect of the contract. We find that *Exley,* which was grounded upon an equipment lease and involved an entirely different statute serving an entirely different legislative purpose, is here inapposite.

Petitioner next urges that the contract should be considered a purchase contract rather than a contract for "public work", mainly because the proportion of labor cost to material costs is minute (2.4% of $418,849, i.e., $10,227). Petitioner cites to an opinion of the Comptroller holding that when the cost of labor is only incidental to a sale of equipment ordinarily installed by the vendor, the contract is not one for "public work" within the ambit of Labor Law § 220 *(see,* 29 Opns St Comp, 1973, p 96). This opinion concerned the purchase and installation of replacement seating and carpeting *(see also,* 3 Opns St Comp, 1947, p 293). In a subsequent opinion, the Comptroller held that the routine installation of telephone equipment where cable is already in place constitutes a purchase contract (1979 Opns St Comp, No. 79-762, p 160). Although supportive of petitioner's argument, this opinion was given with respect to the public bidding requirements of General Municipal Law § 103, not the Labor Law, and as such is not dispositive here. In *Joint Indus. Bd. of Elec. Indus. v Koch* (114 Misc 2d 868), Special Term held that "[a] complex telecommunication system requiring electricians to install and service the equipment comes within the category of 'public works' " *(supra,* at p 870). That court also held that the ratio of labor cost to the total cost, where cost of electronic equipment far exceeds cost of installation labor, should not be determinative. Rather, "[t]he test of the applicability of section 220 should be whether there are persons within the enumerated classes of employment engaged in public work and not determined by an arbitrary numerical ratio of labor to material" *(supra,* p 870). We agree, and hold that it is more

consonant with the language and policies of Labor Law § 220 to hold that the project was public work.

Finally, we find that petitioner failed to timely challenge respondent's classification of its employees as "electricians" and the wage and supplement rates set for this category *(see,* CPLR 217; *A. J. Cerasaro, Inc. v Ross,* 94 AD2d 943, *affd* 60 NY2d 946; *see also, Matter of Schultz Constr. v Ross,* 76 AD2d 151, 155, *affd* 53 NY2d 792). Petitioner received the prevailing wage rate schedule on July 6, 1984 and an amended version the next week, but failed to raise any objections until the instant proceeding was commenced in December 1985. Since the wage rate schedule and the accompanying "contract requirements" clearly placed petitioner on notice of the wages it was required to pay on this project, the governing four-month Statute of Limitations commenced on receipt of these documents *(see, supra).*

MAHONEY, P. J., KANE, CASEY and LEVINE, JJ., concur.

Determination confirmed, and petition dismissed, without costs.