In the Matter of VULCAN AFFORDABLE HOUSING CORPORATION, Respondent, v THOMAS F. HARTNETT, as Commissioner of Labor of the State of New York, Appellant.

Third Department, October 12, 1989

## APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (M. Patricia Smith* and *Jane Lauer Barker* of counsel), for appellant.

*Zubres, D'Agostino & Hoblock, P. C. (Pamela A. McMahon* of counsel), for respondent.

## OPINION OF THE COURT

MIKOLL, J.

In this CPLR article 78 proceeding, which also seeks to quash an administrative subpoena duces tecum, petitioner seeks a determination regarding whether a project established in the City of Albany pursuant to Private Housing Finance Law article XIX is a "public works" project within the parameters of Labor Law § 220 which would therefore require the payment of prevailing wages. We agree with Supreme Court's conclusion that such project is not a "public works" project within the meaning of Labor Law § 220.

In 1986, the City of Albany received a grant from the Affordable Housing Corporation (hereinafter AHC) for the construction of low- and moderate-income housing in the city. The city entered into an agreement for the construction of 130 units of low-income housing. Capital City Housing Development Fund Company (hereinafter CCH) is a housing development fund company incorporated pursuant to the provisions of the Not-For-Profit Corporation Law for the purpose of developing affordable housing. Pursuant to the agreement between AHC and the city, CCH became the recipient of the grant funds and was charged with administering the project. Petitioner, a private contractor, was engaged to build the project. The contract called for the design and construction of 65 duplex houses. Petitioner agreed to limit its profit on the buildings constructed, market them and obtain binding purchase contracts from eligible homeowners. It also agreed to maintain records and accounting books of labor, material and soft construction costs and documentation of grant funds, as well as act as general contractor for the work, hire and supervise all necessary subcontractors and retain all necessary independent contractors.

The legal title to the lots was originally to be held by petitioner prior to their sale to private owners but, to avoid paying sales tax on the materials for the project and for financing purposes, title remained in CCH. Petitioner arranged with a local bank for financing for the construction of

the project and for permanent home financing. The Albany Local Development Corporation became the nominal lender to save payment of mortgage recording taxes. The bank advanced $4,269,000 for construction financing, while the grant on the project from AHC was $1,885,000.

Several banks also agreed to make 30-year mortgages available to eligible home buyers at a fixed rate of 9.9%. The unsubsidized cost of each home was $93,880, with the AHC grant per unit equalling $29,000 in the form of an interest free, second mortgage to AHC. The purchase price was $64,800. Buyers were required to give the second mortgage to AHC and were required to occupy the home for 10 years. Additionally, rental units were to be rented to low- and moderate-income families for 10 years. Upon fulfilling the requirements, the second mortgage would be discharged.

In answer to complaints that petitioner was not paying prevailing rates on the project, respondent commenced an investigation. An administrative subpoena duces tecum was issued to secure certain payroll information which petitioner refused to give. Petitioner then commenced this CPLR article 78 proceeding alleging that Labor Law § 220 was not applicable to this project. Supreme Court concurred and quashed the subpoena seeking the payroll information.

The issue of what constitutes a "public works" project has been discussed in a number of prior decisions so that there are substantial criteria to refer to. In *Matter of Erie County Indus. Dev. Agency v Roberts* (94 AD2d 532, *affd* 63 NY2d 810), it was noted that: "Our courts have consistently limited the application of section 220. 'It is hornbook law that the Labor Law provision applies only to workers involved in the construction, replacement, maintenance and repair of "public works" in a legally restricted sense of that term' " *(supra,* at 537, quoting *Varsity Tr. v Saporita,* 71 AD2d 643, 644, *affd* 48 NY2d 767).

Though Labor Law § 220 does not define the term "public works", the term has a generally accepted plain meaning which has been given effect in *Erie* and other pertinent cases. The focus of these cases in discussing the nature of "public works" is upon the purpose or function of the particular project. This court in *Matter of Twin State CCS Corp. v Roberts* (125 AD2d 18, *revd on other grounds* 72 NY2d 897) underscored the premise that private construction projects, even though financed through industrial development agency bonds, were not "public works" projects for purposes of Labor

Law § 220 and that other imaginative financial schemes, including giving tax exemptions to a project, did not transform an essentially private venture into a public one. In line with that logic, there is no reason to differentiate between a public bond financing arrangement as existed in *Erie* and a direct public grant partially subsidizing the low-income housing project as we have here. The common thread in cases dealing with the resolution of the instant issue is that the public is a direct beneficiary of the work and the primary objective or function of the project must be public. Here, we have no public use of the structure, no public ownership, no public access and no public enjoyment.

The intent of Private Housing Finance Law article XIX is to promote home ownership by persons of low and moderate income *(see,* Private Housing Finance Law § 1110). In order to attain this result, AHC is authorized to issue grants under this program (Private Housing Finance Law §§ 1110, 1112). The Governor's memorandum of approval of the bill establishing these programs states that: "The programs established by this bill are an example of how public moneys can be used in innovative ways to encourage greater private sector investment in our state's housing supply" (Executive Dept mem, 1985 McKinney's Session Laws of NY, at 3278). The statutory scheme thus reveals the private purpose of projects falling thereunder.

In the matter before us, we conclude that the project does not fall within the parameters of a "public works" project even though it serves a public function, i.e., the rehabilitation of neighborhoods. The instant project is clearly differentiable from public housing projects which are fully subsidized and owned by the government and governed by the Public Housing Law and subject to Labor Law § 220.

KANE, J. P., LEVINE and HARVEY, JJ., concur.

Judgment affirmed, without costs.