205

In the Matter of 60 MARKET STREET ASSOCIATES, Petitioner, v THOMAS F. HARTNETT, as Commissioner of Labor, Respondent. (Proceeding No. 1.)

In the Matter of D.M.C. CONTRACTORS, INC., Petitioner, v THOMAS F. HARTNETT, as Commissioner of Labor, et al., Respondents. (Proceeding No. 2.)

Third Department, February 1, 1990

## APPEARANCES OF COUNSEL

*Corbally, Gartland & Rappleyea (Jon Holden Adams* of counsel), for petitioner in proceeding No. 1.

*Plunkett & Jaffe, P. C. (Rochelle J. Auslander* of counsel), for petitioner in proceeding No. 2.

*Robert Abrams, Attorney-General (Jennifer S. Brand, Jane Lauer Barker* and *M. Patricia Smith* of counsel), for respondents in proceedings Nos. 1 and 2.

## OPINION OF THE COURT

YESAWICH, JR., J.

In July 1984, the Dutchess County Department of Public Works solicited lease proposals for office space to be occupied by the county's Department of Social Services. The document detailing the county's requirements permitted proposals for space in new as well as existing buildings. Of those submitted, the county ultimately selected a proposal by Finnco Development Corporation which called for the construction of a new building to be erected on property owned by Finnco.

On April 18, 1986, Finnco conveyed fee ownership to petitioner 60 Market Street Associates (hereinafter Associates), a limited partnership. Associates undertook to finance the project, which was to be constructed by Inryco Construction Company, pursuant to a contract Inryco had entered into with Finnco on June 28, 1985. Petitioner D.M.C. Contractors, Inc. (hereinafter DMC) subcontracted with the construction company to erect the structural components. Before the property was conveyed to it, Associates entered into a 15-year lease of the proposed building with the county. The lease provided that at any time during the 10th or 15th years of the lease, or at any time that the Federal or State governments changed their social services assistance reimbursement policy to a method favorable for ownership by the county, the county had the option of purchasing the property and the building at the fair market value but in any event not less than the initial cost of the project.

The building was completed in July 1987. Prior to the proposed date of occupancy, however, the county and Associ-

ates engaged in litigation to resolve the amount of the yearly rental payments. That dispute was eventually settled, after which the county's Department of Social Services moved into the building.

After visiting the construction site in October 1986, a public works investigator determined that DMC had paid less than prevailing wages to its workers, to the extent of $84,435.21. Following a hearing, the Hearing Officer agreed. He also determined that ultimate control of the project rested with the county and that the purchase option nearly eliminated the entrepreneurial risk of the project, hence the lease agreement purposed construction of a "public work" within the meaning of Labor Law § 220. The Hearing Officer held Associates jointly liable for DMC's noncompliance on the premise that it was the prime contractor on the project. Respondent Commissioner of Labor, adopted these findings and additionally assessed a civil penalty of 5% against DMC. Associates and DMC then instituted CPLR article 78 proceedings challenging the Commissioner's determination that the construction carried out pursuant to the lease agreement was a "public work".

Labor Law § 220 applies only to public agency contracts which may involve the employment of laborers, workers or mechanics and which concern a "public work" (Matter of Erie County Indus. Dev. Agency v Roberts, 94 AD2d 532, 537, affd 63 NY2d 810; see, Labor Law § 220 [2]). As the lease agreement between the county and Associates necessarily involved the employment of workers, the narrow issue presented is whether the contract to lease a privately owned, but not yet built, facility to provide office space for the county's Department of Social Services constitutes a public work project. We hold that it does not.

Because the statute does not define "public work", it has generally been given its plain meaning (see, Matter of Erie County Indus. Dev. Agency v Roberts, supra, at 538). Contemporary definitions focus upon the public purpose or function of the particular project (see, Matter of Vulcan Affordable Hous. Corp. v Hartnett, 151 AD2d 84, 86). To be a public work the project's primary objective must be to benefit the public (supra, at 86). Associates' goal, however, was to make a profit; the public benefited only incidentally.

To characterize the lease arrangement in this instance as a "public work" contract distorts the very essence of the term. Associates retained all of the risks and benefits of ownership. The building was constructed on privately owned property and

once completed it was privately, not publicly, owned.* The project was financed entirely by private funds, no public money was used, and a partner of Associates personally guaranteed the note. Nor was the lease publicly bid *(see generally,* General Municipal Law § 103).

Apart from the fact that Associates was not free to assign or convey its interest in the property without first securing the county's consent, the record lacks any support for the Hearing Officer's conclusion that the county retained control of the project. Associates obtained all the necessary zoning permits and the county did not participate in designing the core structure of the building. In fact, the underlying design was contemplated before the county signed the lease. Additionally, the county's tenant fit specifications accounted for no more than 25% of the building's over-all cost, and specifically did not involve the steel work for which the Commissioner penalized petitioners.

Moreover, the county's occupancy rights and obligations under the lease commenced only after the structure was completed. Notably, the county had to bring a lawsuit to even move into the building. Once installed in its new offices, the county's right to continued occupancy was contingent upon its performance of the lease obligations. Additionally, the lease was for only 15 years, in a building with a useful life of 50 years, and there was no option to renew. And the county acknowledged in the lease that it would surrender the building upon expiration of the rental term. As for the option to purchase, that did not eliminate Associates' entrepreneurial risks, for the county, not Associates, reigned over whether the option would be exercised *(but cf., Matter of Long Is. Light. Co. v Industrial Commr. of N. Y. State,* 40 AD2d 1003, 1004, *affd* 34 NY2d 725).

Essentially, Associates was no more or less than the county's landlord. The lease required Associates to obtain insurance and, in the event that the building was damaged by fire, catastrophe or casualty, Associates retained the risk of loss.

---

* On April 18, 1986, Associates transferred fee title of the building, which it had acquired that same day from Finnco to the county's Industrial Development Agency, which as the nominal owner could take advantage of tax abatements. Thereafter, as a result of condemnation proceedings, the county took title to the building on June 30, 1988. Although this latter information was not in the record, it is a matter of public record of which we take judicial notice *(see, Matter of Sunhill Water Corp. v Water Resources Commn.,* 32 AD2d 1006, 1008).

As with most tenants, the county was allowed to make non-structural alterations to the interior of the building subject to Associates' prior approval. Associates was responsible for "major capital repairs" while the county handled "standard annual maintenance".

Accordingly, we conclude that the lease arrangement here, even though it contemplated construction of a new building, does not come within the parameters of Labor Law § 220 (see, Applicability of the Davis-Bacon Act to the Veterans Administration's Lease of Medical Facilities, Opn of Off of Legal Counsel, June 6, 1988).

WEISS, J. P., MIKOLL, LEVINE and MERCURE, JJ., concur.

Determination annulled, with costs, and petitions granted.