In the Matter of NATIONAL RAILROAD PASSENGER CORPORA-
TION, Petitioner, v THOMAS F. HARTNETT, as Commissioner
of Labor, Respondent. (And Another Related Proceeding.)

Third Department, July 11, 1991

APPEARANCES OF COUNSEL

*Siff, Rosen & Parker, P. C. (Mark S. Landman* of counsel), for National Railroad Passenger Corporation, petitioner.

*Abberley Kooiman (Richard Hagouel Langsam* of counsel), for Humphreys & Harding, Inc., petitioner.

*Robert Abrams, Attorney-General (Christina Norum* of counsel), for respondent.

## OPINION OF THE COURT

LEVINE, J.

Petitioners in these CPLR article 78 proceedings challenge the determination by respondent that the West Side Connec-

tion Project for the construction of a new railroad line, whereby passenger train service between New York City and points north and west via Albany would originate and terminate at New York City's Pennsylvania Station, involves a contract with a governmental agency for a public works project and, hence, is subject to this State's mandatory prevailing wage rate statute for workers employed on the project (see, Labor Law § 220). The essential facts here are uncontested. Pursuant to legislation by Congress in the Rail Safety and Service Improvement Act of 1982 (see, 45 USC §§ 853-855), petitioner National Railroad Passenger Corporation, commonly known as Amtrak, entered into financing and implementation agreements with the State for the construction of the new line. The purpose of these agreements was to consolidate at Pennsylvania Station Amtrak service to, from and through New York City for all passenger trains using the Empire Corridor between New York City and Albany, Montreal, Toronto, Buffalo, Chicago and points west (eliminating the use of Grand Central Terminal for such rail traffic), and the Northeast Corridor between Boston and Washington, D.C.

The agreements provided that 60% of the cost of the project was to be borne by Amtrak and 40% by the State. The estimated cost of the project was $50 million, Amtrak's $30 million share of which had been appropriated by Congress for the project. Provisions of the agreements required the approval of the State Department of Transportation for the selection of all contractors on the project, and for change orders involving the expenditure of at least $10,000. It was also provided that in the event of permanent cessation of Amtrak service within the next 30 years, the State could purchase Amtrak's interest at the appraised value of the project less the State's prior contributions, or the State would receive 40% of the proceeds of any sale or other disposition of the improvements created by the project. Amtrak subsequently contracted with petitioner Humphreys & Harding, Inc. for clearing, grubbing and track removal and fencing preparatory to the installation of the improvements, and that contractor apparently subcontracted with other companies for portions of the work.

Respondent subsequently issued a notice of hearing charging that the subcontractors had violated Labor Law § 220. The parties agreed to bifurcate the hearing to determine whether the project constituted a public works subject to Labor Law § 220 before hearing the extent of any actual prevailing wage

violations. Following the hearing on the threshold issue, the Hearing Officer determined that the project constituted a public works. Respondent upheld the Hearing Officer's report and recommendations in all respects. These proceedings were then initiated to review the determination.

All parties agree that, for Labor Law § 220 to apply to the West Side Connection Project, two elements must exist in connection therewith: "(1) [a] public agency must be a party to a contract involving the employment of laborers, workmen, or mechanics, and (2) the contract must concern a public works project" *(Matter of Erie County Indus. Dev. Agency v Roberts,* 94 AD2d 532, 537, *affd* 63 NY2d 810). The contractual arrangements between the State and Amtrak rather easily satisfied the first of these elements, in that a public agency is one of the parties and Amtrak is obligated thereunder to go forward with the project, necessarily involving the employment of workers and mechanics *(see, Matter of 60 Mkt. St. Assocs. v Hartnett,* 153 AD2d 205, 207, *affd* 76 NY2d 993).

Whether the West Side Connection Project meets the "public works" requirement of the statute is a more difficult question. Under the case law, this facet of the test for application of Labor Law § 220 focuses on the nature, or the direct or primary objective, purpose and function, of the work product of the contract *(see, Matter of 60 Mkt. St. Assocs. v Hartnett, supra; Matter of Vulcan Affordable Hous. Corp. v Hartnett,* 151 AD2d 84, 87; *Matter of Erie County Indus. Dev. Agency v Roberts, supra,* at 538). The issue of what is a public works is viewed as essentially one of statutory reading and analysis, such that respondent's determination that a given project is a public works is not entitled to special deference *(see, Matter of Stephens & Rankin v Hartnett,* 160 AD2d 1201, 1202; *Matter of Erie County Indus. Dev. Agency v Roberts, supra,* at 541).

In arguing to uphold the determination that the West Side Connection Project is a public works, respondent points to (1) what he terms the "quasi-public" nature of Amtrak itself, described as having been created and endowed by Congress to implement a national policy of providing low cost and energy efficient intercity rail passenger service and thereby alleviate overburdened alternative means of transportation, (2) the express recognition in the contract documents and elsewhere of the public purpose and beneficial public effects of the project as an important contribution to the revitalization of passenger rail transportation for the Northeast Corridor, (3) the fact that the project's funding was entirely composed of

State and congressional appropriations, and (4) the State's contractual rights to veto the selection of contractors and change orders of any significance during construction, and to acquire the improvement or share in the proceeds of its sale should Amtrak cease operations over the line within 30 years.

■ In our view, respondent's analysis mischaracterizes the role created for Amtrak by Congress and, perhaps because of that error, confuses the objectives of Congress and this State in promoting and supporting the West Side Connection Project with the primary function and purpose of the project itself. As the decision in *National R. R. Passenger Corp. v Atchison, Topeka & Santa Fe Ry. Co.* (470 US 451) makes unmistakably clear, Congress intentionally structured Amtrak so that its contractual arrangements and activities *cannot* be considered to be the acts of or even to be on behalf of the United States Government. Amtrak, under the statute of its creation (84 US Stat 1327; 45 USC § 501 *et seq.),* is designated as a private, for-profit corporation, and any imputation of its status as an agency of the Government is expressly denied *(National R. R. Passenger Corp. v Atchison, Topeka & Santa Fe Ry. Co., supra,* at 454). Amtrak was created as a means of offering relief to private railroads from their financially disadvantageous obligations, as common carriers, to maintain intercity passenger service over their lines, under the congressional assumption that a reorganized and restructured rail passenger system could be successful and eventually self-sustaining *(supra,* at 454-455). The means of such relief was the opportunity for each private railroad system to enter into an agreement with Amtrak whereby, for a consideration based on the system's passenger service losses, Amtrak would take over the railroad's responsibility for providing passenger service *(supra,* at 455). The United States is not a party to any such contracts, however, nor is Amtrak acting on behalf of the United States in entering into or performing such contracts *(supra,* at 470-471).

Thus, Amtrak was created to fulfill, and continues to perform, a function historically not that of Government, but of private common railcarriers. And Congress, in the Amtrak statute, expressly eschewed any intimation that the Government was thereby assuming a public responsibility for providing passenger rail service. This being so, respondent's argument that Amtrak is a quasi-public entity, based, *inter alia,* on a national and State policy favoring preservation and expansion of passenger rail service, misses the point. Amtrak,

in this respect, is clothed with a public interest to no greater extent than the country's private railcarriers who presently provide freight service or, indeed, any other private industry of national importance.

The foregoing conclusion largely undercuts respondent's determination that the West Side Connection Project constitutes a public works. Plainly, Amtrak's purpose in entering into the contract with the State was to enhance its nongovernmental function of providing efficient and eventually profitable passenger train service for the Empire and Northeast Corridors. Under the contracts with the State, Amtrak, a private corporation, retains ownership of the lines to be installed in the project, bears the risk of future financial losses or physical destruction, is entitled to all profits from its operations over the lines, and retains the authority to condition the public's use and enjoyment of its facilities upon the purchase of a passenger ticket. These are the factors that have repeatedly been held sufficient to preclude any determination that a given project constitutes a public works for purposes of applying Labor Law § 220 *(see, Matter of 60 Mkt. St. Assocs. v Hartnett,* 153 AD2d 205, *supra; Matter of Vulcan Affordable Hous. Corp. v Hartnett,* 151 AD2d 84, *supra; Matter of Erie County Indus. Dev. Agency v Roberts,* 94 AD2d 532, *supra; see also, Cattaraugus Community Action v Hartnett,* 166 AD2d 891; *Matter of Penfield Mechanical Contrs. v Roberts,* 119 Misc 2d 105, *affd* 98 AD2d 992, *affd* 63 NY2d 784).

The additional factors in the contract documents cited to and relied upon by respondent do not dispel the conclusion that the West Side Connection Project was not a public works. Significant partial and even complete governmental funding of an improvement is insufficient to convert a private project into a public works *(see, Cattaraugus Community Action v Hartnett, supra; Matter of Vulcan Affordable Hous. Corp. v Hartnett, supra).* Respondent continues to confuse the public purpose of a funding scheme with the essentially private purpose of the venture itself, its structure and operations *(see, Cattaraugus Community Action v Hartnett, supra; Matter of Vulcan Affordable Hous. Corp. v Hartnett, supra; see also, Matter of Erie County Indus. Dev. Agency v Roberts, supra,* at 540). Nor is it inconsistent with the private nature of the West Side Connection Project that the State has the contractual right to veto contractors and proposed changes in the project of any financial significance, in view of the State's obligation to fund 40% of the ultimate actual cost of the project. Finally,

we find of little significance in the public works equation that the State retained completely contingent reversionary rights to acquire the improvements of the West Side Connection Project, or to recover its contribution if those improvements were sold, in the event that Amtrak ceased operation within the next 30 years. Similar retained rights of the contracting public agency were held not to be dispositive in *Matter of 60 Mkt. St. Assocs. v Hartnett (supra)*.

For all the foregoing reasons, the petitions should be granted and the determination annulled.

MAHONEY, P. J., CASEY, WEISS and HARVEY, JJ., concur.

Adjudged that the determination is annulled, with costs, and petitions granted.