Hon. Carl P. Carlucci Formal Opinion First Deputy Comptroller No. 2000-F3 Office of the State Comptroller Alfred E. Smith State Office Bldg. Albany, N Y 12234
Dear Mr. Carlucci:
You have asked whether prevailing wages and supplements must be paid to employees on projects for work in connection with charter schools, such as work to construct, renovate or repair buildings for use as charter schools. For the reasons set forth below, we conclude that as a general rule prevailing wages and supplements must be paid on such projects, but there could be certain circumstances in which the prevailing wage statutes may not apply.
1. Prevailing Wages and Supplements
The New York State Constitution provides that laborers, workmen and mechanics engaged in "any public work" cannot "be paid less than the rate of wages prevailing in the same trade or occupation in the locality within the state where such public work is to be situated, erected or used." N Y Const, art I, § 17. This provision emanates from the 1905 State Constitution. Cayuga-Onondaga Counties Bd. of Co-op. EducationalServices v. Sweeney, 89 N.Y.2d 395, 401 (1996). The prevailing wage requirement was retained and written in its present form in the 1938 State Constitution. Id.
Labor Law § 220 implements this constitutional requirement. Labor Law § 220(3) provides that "[t]he wages to be paid for a legal day's work . . . to laborers, workmen or mechanics upon such public works, shall be not less than the prevailing rate of wages" and supplements provided must be in accordance with the prevailing practices in the locality. See Labor Law § 220(5)(a), (b) and (c).
The statute provides that the "fiscal officer" determines the prevailing wages and supplements to be paid, and these schedules become part of the specifications for the work. Id., § 220(3). Outside New York City, the Commissioner of Labor is the fiscal officer required to ascertain prevailing wage rates and supplements. Id. In New York City, the City Comptroller is the fiscal officer who makes this determination. Id. Upon a verified complaint in writing of any interested person or any employee organization, the fiscal officer must undertake a compliance investigation to determine whether a contractor or subcontractor is paying prevailing wages and supplements. Id., § 220(7). The fiscal officer may also undertake such an investigation on his or her own initiative. Id. Upon determination of a violation of the prevailing wage provisions, the fiscal officer is authorized to require remediation and assess civil penalties. Id., § 220(3), (8). Upon determination of a wilful violation, additional penalties apply, including possible debarment from bidding upon public work projects. Id., § 220-b(3)(b). Conviction of a wilful violation of the law is a misdemeanorId., § 220(3).
Labor Law § 220 has been interpreted to apply to projects which meet both prongs of a two-part analysis: first, a public entity must be a party to a contract involving the employment of laborers, mechanics or workmen; and second, the project under construction must be a public work project. Matter of Erie County Industrial Development Agency v. Roberts,94 A.D.2d 532 (4th Dep't 1983), aff'd, 63 N.Y.2d 810 (1984).
In order to determine whether a charter school building project meets the two-part test of Labor Law § 220, it is first necessary to examine the statutory purpose and nature of charter schools.
2. Charter Schools
The purpose of charter schools is to provide opportunities to operate independently of existing schools and school districts, provide flexibility to improve student learning and achievement and meet other goals. Education Law § 2850(2). "Eligible applicants" to establish a charter school include teachers, parents, school administrators, community residents or any combination. Id., § 2851. An application may be filed in conjunction with a college or university, museum, educational institution, not-for-profit corporation or for-profit business or corporate entity authorized to do business in New York State. Id., 2851(1). Information required in an application is specified by statute and includes a description of the proposed facilities of the school. Id., § 2851(2)(j). If the information regarding the facilities is not known at the time of the application, it must be provided later, not more than 10 days after acquiring the facility. Id.
A charter school may be located in an existing public school building, in space provided on a private work site, in a public building or in any other suitable location. Id., § 2853(3). Charter school operations are financed by payments from the school district for each student enrolled where he or she resides in accordance with a fixed formula.Id., § 2856(1). Additionally, a fund is established in the joint custody of the State Comptroller and the State Commissioner of Taxation, known as the Charter Schools Stimulus Fund, for grants and loans to charter school applicants for start-up costs and costs associated with acquisition, renovation, or construction of school facilities. State Finance Law § 97-sss.
The applicant submits the application to a "charter entity," which includes the board of education of a school district, the board of trustees of SUNY or the Board of Regents. Id., § 2851(3)(a). Upon approval of an application by a charter entity, the applicant and charter entity enter into a proposed agreement allowing the applicants to organize and operate a charter school. Id., § 2852(5). The proposed agreement contains all the information required to be provided in the application, as supplemented or modified. Id., § 2852(5).
The charter entity then submits the proposed charter, the application and supporting documentation to the Board of Regents for final approval. Id. The Board of Regents may issue a charter to operate a charter school as proposed by the charter entity, or it may return the proposed charter for reconsideration. If the Board of Regents does not act within 60 days the proposed charter is deemed approved. Id., § 2852(5-a). A subsequent revision of a charter may only be made upon the approval of the charter entity and the Board of Regents. Id., § 2852(7).
Upon approval of a charter, the Board of Regents incorporates the charter school as an education corporation. Id., § 2853(1)(a). An education corporation formed to operate a charter school has all the corporate powers necessary to carry out a charter school program, all of the powers of an education corporation formed to operate an elementary or secondary school and those powers granted under the Not-For-Profit Corporation Law that are made applicable to charter schools. Id., § 2853(1)(b) (referencing Education Law § 216, 216-a, 226). The charter entity and the Board of Regents are the "public agents" authorized to supervise and oversee the charter school. Id., § 2853(1)(c).
Significantly, "[a] charter school shall be deemed an autonomous public school." Id., § 2853(1)(c). Also, the charter school law provides that
 [t]he powers granted to a charter school under this article constitute the performance of essential public purposes and governmental purposes of this state. Id., § 2853(1)(d).
Thus, any "eligible applicant" that receives a charter from the Board of Regents to operate a charter school operates an education corporation. A charter school is deemed an independent public school, is overseen by the Board of Regents and provides publicly-funded compulsory public education. It makes no difference whether the successful applicant for a charter is in the private or public sector. Rather, all charter schools are public entities performing essential public and governmental purposes.
3. Application of the Two-Part Analysis
As noted above, Labor Law § 220 applies to projects that meet both the "contract" and the "public work" prongs of a two-part analysis.[1]
a. "Contract" Test
The "contract" prong of the test is met when a public entity is a party to a contract involving the employment of workers. Courts have construed this requirement liberally because Labor Law § 220 implements the constitutional mandate to pay prevailing wages to workers "engaged in the performance of any public work." N Y Const, art I, § 17 (emphasis added).
For example, the public agency need not be a direct party to the contract that requires the employment of workers in order to satisfy the contract requirement. Any contract, including a lease or financing contract, that a public entity enters into that involves the construction, renovation, or repair of a building would contemplate the employment of laborers, workers or mechanics and thus would satisfy the first "contract" prong of the test. See Matter of 60 Market St. Assoc. v. Hartnett, 153A.D.2d 205 (3d Dep't), aff'd 76 N.Y.2d 993 (1990) (lease agreement between county and limited partnership providing financing for construction project);Matter of Erie County Industrial Development Agency v. Roberts,94 A.D.2d 532 (4th Dep't 1983), aff'd, 63 N.Y.2d 810 (1984) (lease agreement between industrial development agency and private business);Bridgestone/Firestone, Inc. v. Hartnett, 175 A.D.2d 495 (3d Dep't 1991) (warranty agreement between subcontractor and supplier pursuant to requirement for warranty in general contract between state and contractor).
Accordingly, contracts that contemplate the construction, renovation or repair of a building for use as a charter school may satisfy the "contract" prong of this test. For example, a financing agreement between any entity and an IDA to finance the construction or renovation of a facility for use as a charter school would satisfy the contract requirement. Similarly, a grant or loan agreement entered into between the State and any entity to receive money from the Charter Schools Stimulus Fund would satisfy the contract requirement. Likewise, any agreement to lease all or part of an existing public building for use as a charter school that involves renovations or repairs to the building would satisfy the contract prong.
Importantly, for charter school construction projects, as a general rule the charter itself will constitute the "contract" by a public entity that meets the first prong of the prevailing wage analysis. Applicants for a charter are required to provide the charter entity with information about the facilities to be used for the school. That information, if approved by the charter entity, becomes a term of the proposed charter. Education Law § 2852(5)(a). Once approved by the Board of Regents, it becomes a term of the charter. Id. § 2852(5-a). If the information about the facilities is not known at the time of the application, it must be provided to the charter entity, and, if applicable the Board of Regents, within 10 days of acquiring facilities for the school. Id., § 2851(2)(j). This and other updated information also becomes part of the charter. Id., § 2852(5). As a result, if an applicant for a charter school will use a building that will be constructed or renovated to house a charter school, then the charter that is issued by the State will meet the "contract" clause of the analysis, because it is a contract entered into by a public entity involving or contemplating the employment of laborers, mechanics or workmen. The "public entity" involved will be either the Board of Regents, or SUNY or the school district that signs the charter agreement, and in certain circumstances the applicant could be a public entity as well.
In addition, after the charter school has been established, any contract entered into by the charter school as part of a project to perform construction work upon, renovate or repair a building used by the school will satisfy the "contract" prong of the test. Upon approval of a charter by the Board of Regents, the charter school becomes incorporated as an education corporation and is deemed to be an "independent and autonomous public school." Education Law § 2853(1)(c). Thus, the law makes clear that the charter school itself is a public entity, and contracts entered into by the charter school that involve or contemplate the employment of workers will meet the test. Although Labor Law § 220(2) is limited to contracts entered into by "the state or a public benefit corporation or a municipal corporation or a commission appointed pursuant to law," as noted above this statutory list cannot supersede the constitutional requirement that prevailing wages be paid to workers engaged in the performance of "any" public work. As a result, the statute is liberally construed and has been interpreted to cover contracts entered into by other public or governmental entities. See e.g., Stephensand Rankin, Inc. v. Hartnett, 160 A.D.2d 1210 (3d Dep't 1990) (holding that Labor Law § 220 applies to commission created by federal law).
b. "Public Works" Test
Under the second prong of the prevailing wage analysis, the project under construction must be a "public works" project. The term "public works" is not defined in the Labor Law.
 Because the statute does not define "public work", it has generally been given its plain meaning. . . . Contemporary definitions focus upon the public purpose or function of the particular project. . . . To be a public work the project's primary objective must be to benefit the public.
60 Market St. Assoc. v. Hartnett, 153 A.D.2d 205, 207 (3d Dep't), aff'd,76 N.Y.2d 993 (1990) (citations omitted). Courts consistently have held that the purpose or function of a project determines whether it is a public work and have examined whether the purpose includes public use or enjoyment. Matter of Erie County Industrial Development Agency v.Roberts, 94 A.D.2d 532 (4th Dep't 1983), aff'd, 63 N.Y.2d 810 (1984);Cattaraugus Community Action, Inc. v. Hartnett, 166 A.D.2d 891 (4th Dep't 1990); Matter of Vulcan Affordable Housing Corporation v. Hartnett,151 A.D.2d 84 (3d Dep't 1989). The Court of Appeals has concluded that the prevailing wage law applies to all public works including contracting by school districts. Brian Hoxie's Painting Co., Inc. v. Cato-MeridianCent. School Dist., 76 N.Y.2d 207 (1990).
We believe that, as a general rule, any project involving the construction, renovation or repair of a building, the purpose of which is to provide a facility for a charter school would, as its objective, benefit the public. Such a project, therefore, would meet the "public work" prong of the test for application of the prevailing wage laws. A charter school is characterized as a public school and carries out an essential public purpose in providing compulsory public education to students. Without question, a charter school benefits the public.
The "public work" test generally will be met by such construction activities even if the charter school is not located on public property. The charter school law provides that operators of charter schools may own, lease or rent their buildings and that a charter school may be located on a private work site. Education Law § 2853(3)(a). New construction or renovations may be required at these privately-owned locations. Nevertheless, any such construction or renovation of a private building to provide a facility for a charter school must meet the unique needs of a school and the children who will attend. Moreover, as noted above, the school itself is statutorily designated as a public school which is fulfilling an essential public and governmental purpose. Thus, construction projects for charter schools are distinguishable from construction projects on private property at issue in prior cases in which the prevailing wage laws were held not to apply. See e.g., Matterof Vulcan Affordable Housing Corp v. Hartnett, 151 A.D.2d 84 (3d Dep't 1988) (Labor Law § 220 held not to apply to construction of low and moderate income housing on private property, because there was "no public use of the structure . . . no public access and no public enjoyment" of the project); Matter of Cattaraugus Community Action Inc. v. Hartnett,166 A.D.2d 891 (4th Dep't 1990) (holding that prevailing wages need not be paid on construction of home for homeless teenage mothers, because private entity developed and owned the facility, project was to be used for a "specific and narrowly defined group" and owner agreed to maintain facility as home for only seven years).
The exemption of charter schools from taxes, fees and assessments supports the general conclusion that all charter schools — including those located on private property — benefit the public. (Nonprofit organizations have exemptions from some of these taxes and charges under other provisions of law.) A charter school is exempt to the same extent as other public schools from all taxation, fees, assessments or special ad valorem levies on its earnings and its property, including property leased by the charter school. Education Law § 2853(1)(d). Assessments and ad valorem levies are charges on real property paid by the owner of the property. Presumably, this exemption is provided to public and private owners of buildings used for charter schools because the legislative scheme for development of charter schools contemplates projects in which private owners lease facilities to charter schools and, therefore, benefit the public.
Nevertheless, there may be circumstances in which the "public work" test will not be met and the prevailing wage laws would not apply to a charter school construction project. For example, if an entity involved in the operation of a charter school were to enter into a contract with a developer who had no connection with the charter school, for the construction of a new developer-owned building, and the project were controlled by the private developer, financed entirely by the developer's funds, and the building leased to the charter school operator for a period substantially shorter than the useful life of the building, then Labor Law § 220 might not apply. Under existing case law, in these circumstances the builder could be deemed to be undertaking the project purely to make a profit, and the public benefited only incidentally. See60 Market St. Assoc., supra, 153 A.D.2d at 207-08.
If any of these factors were not present, however, then it is more likely that prevailing wages and supplements would have to be paid on the project. Moreover, some characteristics of any charter school project may distinguish it from the project under review in 60 Market St. Assoc. in which Dutchess County leased office space from a private developer. Generally, office space easily can be reconfigured for other tenants, supporting the conclusion that the private developer would profit from the short-term county tenancy as from any other tenant, rather than principally provide a public benefit. In contrast, design of a charter school would require substantially more tenant-set specifications, for example, classrooms, an auditorium, gymnasium, laboratories and other unique characteristics of a school. Thus, the tenant-operator of the charter school would have more control over design, and a private developer would be more constrained with respect to future tenants of that space as configured. Further, under the Charter School Law the private owner of the building receives exemptions from various real property assessments, establishing some public connection to the project. The fiscal officer will have to undertake a case-by-case analysis of the circumstances in determining whether Labor Law § 220 will apply.
For the reasons set forth above, we conclude that projects for the construction, renovation or repair of a building for a charter school generally will be subject to sections 220, et seq., of the Labor Law as indicated in this opinion.
Very truly yours,
ELIOT SPITZER, Attorney General
[1] The application of Labor Law § 220 to charter school projects is not affected by Education Law § 2854(1)(b), which provides in part: "A charter school shall meet the same health and safety, civil rights and student assessment requirements applicable to other public schools except as specifically provided in this article. A charter school shall be exempt from all other state and local laws, rules regulations or policies governing public or private schools, Boards of Education or school districts, including those relating to school personnel and students except as specifically provided in this article." This provision does not exempt charter schools from all state laws, but rather from only those laws that specifically apply to public or private schools. Any other interpretation would preclude applications of all labor laws, like minimum wage laws, as well as zoning laws, criminal laws, and hosts of other general laws that are not mentioned in the charter school law. Moreover, given the constitutional mandate of the prevailing wage law, any general exemptions from State law found in the charter school law would not eliminate the prevailing wage requirement.