OPINION OF THE COURT
Michael C. Lynch, J.
This proceeding arises from correspondence dated August 31, 2007, written in response to a request for an “Opinion Regarding Charter Schools,” wherein a representative of the respondent New York State Department of Labor opined that the “prevailing wage rates apply to those situations where a charter school constructs, alters, repairs, or maintains school facilities.” The basis for the August 31 letter opinion was that (a) construction of charter school facilities has a “public purpose” and the object of such construction is to benefit the public; (b) the charter constitutes an agreement between the charter school and a public agency (the Board of Regents); or, alternatively, either (c) “it could be argued” that the charter school is a public entity; or (d) the “third party bill” (L 2007, ch 678) subjects work done by charter schools to the prevailing wage law.
By correspondence dated September 11, 2007, respondent Commissioner wrote to the Charter Schools Institute and to the Commissioner of the State Education Department to advise that “it is now the position of this Department that any work performed on the construction, repair, or maintenance of a charter school is subject to the prevailing wage law and contractors must pay prevailing wages to their laborers, workmen [sic], or mechanics engaged in such work.” The respondent advised, further, that the Department of Labor would begin to enforce *455 prevailing wage law on all charter school projects for which the advertising for bids occurs on or after September 20, 2007. (Petitioners’ exhibit I.)
The petitioner Foundation for a Greater Opportunity (hereinafter the Foundation) is a not-for-profit corporation that “supports the creation of New York charter schools in economically disadvantaged neighborhoods” and serves as an “educational resource” to charter schools (verified petition ¶ 12). The petitioner Carl C. Icahn Charter School operates a charter school in Bronx, New York, pursuant to a charter issued by the New York State Board of Regents in 2001 (id. ¶¶ 12, 34). Petitioner Carl C. Icahn Charter School — Bronx North operates a charter school in Bronx, New York, pursuant to a charter issued by the Board of Regents in 2006 (id. ¶¶ 14, 38). By order to show cause dated November 21, 2007 (McNamara, J.), petitioners commenced this combined CPLR article 78/declaratory judgment proceeding to challenge the position taken by respondents in the correspondence dated August 31 and September 11, 2007. Specifically, petitioners seek an order declaring that the “new position” (1) is in excess of respondent Commissioner’s jurisdiction, and (2) is affected by an error of law; is arbitrary and capricious; is an abuse of discretion; constitutes an unlawful usurpation of legislative authority and is unenforceable; and, further, declaring (3) that the petitioner “and other charter schools duly chartered pursuant to the Education Law § 2850 et. seq. are not public agencies or public entities,” and (4) that because the projects for construction, renovation, repair and maintenance undertaken by the petitioners and “other charter schools” are not public works, the projects undertaken by the petitioners and “other charter schools” are not subject to the prevailing wage law. Finally, petitioners seek an order (5) enjoining respondents from applying the prevailing wage law of the state to petitioners and “other charter schools.”
The “system of charter schools” in New York State is governed by article 56 of the Education Law (§ 2850 et seq.). A charter school is an “independent and autonomous public school” (Education Law § 2853 [1] [c]), which is incorporated by the New York State Board of Regents as an “education corporation” (Education Law § 2853 [1] [a]).[1] The Board of Regents supervises and oversees the creation and operation of charter *456 schools (Education Law § 2853 [1] [c]). Charter schools are publicly financed through the local school districts (Education Law §§ 2856, 3602 [1] [f]), though the statute provides that charter schools are deemed to be “nonpublic schools” for purposes of the type and extent of specific public assistance and oversight (Education Law § 2853 [4]). Charter school employees are public employees for purposes of the Public Employees’ Fair Employment Act (Civil Service Law § 200 et seq.). If the charter school closes or is dissolved, the students, student records, and assets of the charter school are transferred to the local school district or to another charter school located in the district (Education Law § 2851 [2] [t]). By statute, the powers granted to a charter school by the Board of Regents pursuant to a charter “constitute the performance of essential public purposes ... of this state” (Education Law § 2853 [1] [d]).
Charter schools are created pursuant to a comprehensive application process that is set forth in the statute. The process begins upon submission of an application by “teachers, parents, school administrators, community residents or any combination thereof’ to the charter entity[2] (Education Law § 2851 [1]). The act provides specific guidance with regard to the information the applicant must provide when seeking a charter. The application must, for example, include specific details with regard to the school’s proposed mission, educational standards, requirements and goals, student-teacher ratios, and its proposed administrative policies and procedures (see Education Law § 2851 [2] [a]-[x]).
The application must also include details with regard to the facilities proposed for the charter school. Specifically, the applicant must detail:
“[t]he location of the school, if known, and the means by which pupils will be transported to and *457 from the school. If the facilities to be used by the proposed school are not known at the time the application is submitted, the applicant shall notify the charter entity and, if applicable, the board of regents within ten business days of acquiring facilities for such school; provided, however, that the charter school must obtain a certificate of occupancy for such facilities prior to the date on which instruction is to commence at the school.” (Education Law § 2851 [2] □].)
Notably, the act provides that a charter school may be located in “any . . . suitable location,” including within an existing public school building, within space that is part of a private work site, or within a public building (Education Law § 2853 [3] [a]). By statute, charter schools are deemed to be “nonpublic schools” for purposes of local zoning, land use regulations and building code compliance (id.). Charter schools, like traditional public schools, are exempt from “all taxation, fees, assessments or special ad valorem levies on its earnings and its property, including property leased by the charter school” (Education Law § 2853 [1] [d]).
Once the application to establish the charter school is submitted, the charter entity has to act on the application within a specified time (Education Law § 2852 [1]). Specifically, the charter entity may disapprove the application or require the applicant to modify or supplement an application as a condition of approval (Education Law § 2852 [3]). The statute encourages charter entities “to give preference to applications that demonstrate the capability to provide comprehensive learning experiences to students identified by the applicants as at risk of academic failure” (Education Law § 2852 [2]). The charter entity may approve a charter application, however, only if it finds that (1) the proposed school complies with the requirements of the Charter Schools Act and all other applicable laws, rules, and regulations; (2) the applicant has the ability to operate the school in an “educationally and fiscally sound manner”; (3) granting the application is “likely to improve student learning and achievement and materially further the purposes” of the Charter Schools Act; and (4) where more than 5% of the school-aged children in a school district are attending charter schools, that either the local school district consents to the establishment of the school or that granting the application would have a “significant educational benefit” to those children expected to attend the school (id.). If a charter entity decides to disapprove *458 the application, though it must issue written reasons for the denial, the determination is final and not subject to judicial review (Education Law § 2852 [6]). The statute expressly prohibits the conversion of an existing private school to a charter school.[3]
If an application for the charter school is approved, the charter entity and the applicant enter into a proposed, written agreement, or the “charter” (Education Law § 2852 [5]). Next, the proposed charter is submitted to the Board of Regents (id.). Within 90 days thereafter, the Board of Regents must either approve and issue the charter or return the proposed charter to the charter entity for reconsideration with its written comments and recommendations (Education Law § 2852 [5-a]). If the proposed charter is returned, the charter entity must then reconsider, modify and resubmit the proposed charter (Education Law § 2852 [5-b]). The charter agreement is deemed to be approved if, upon submission or resubmission, the Board of Regents fails to act upon it in 90 days or within 30 days if the charter entity is the Board of Trustees of the State University (id.).
Here, though the record does not include a copy of the charter issued to either the Carl C. Icahn Charter School or the Carl C. Icahn Charter School — Bronx North, petitioners explain that the Carl C. Icahn Charter School operates in a building that was newly constructed by the Foundation in 2001 (verified petition ¶ 34). Petitioners do not detail the financing of the new construction but explain that the building is now owned by the Foundation and leased to the Carl C. Icahn Charter School (id. H 36). Further, petitioners explain that the Foundation is “in the process of constructing” a middle school building for the Carl C. Icahn Charter School (id. ¶ 35). The Foundation is contributing $3 million toward the construction, with the remainder of funds provided by the New York City School *459 Construction Authority (id. ¶ 37). Once completed, the building will be owned by the City of New York and occupied by the charter school pursuant to a lease (id). Petitioners explain that the Carl C. Icahn Charter School — Bronx North is temporarily located on the second floor of a public school building owned by the Department of Education. It plans, however, to move into a new building, but does not yet have specific details with regard to the new location (id. H 39). Finally, petitioners explain that the Foundation is “currently engaged” in plans for six new Icahn charter schools. Petitioners thus seek a determination that the prevailing wage law does not apply to construction, renovation, repair, and maintenance undertaken by the Foundation (id. ¶ 42).
As a threshold matter, the court rejects respondents’ assertion that petitioners lack standing to bring this proceeding. The basis of this argument is that petitioners do not have an immediate plan to construct a new school or renovate an existing school. Petitioners counter, however, that there are immediate plans for repair and maintenance at the Carl C. Icahn Charter School (see generally Mar. affidavit). Moreover, petitioners assert that in order to plan for the financing and construction of charter schools in the future, it is entitled to resolution of the instant dispute. This court agrees (see e.g. Klostermann v Cuomo, 61 NY2d 525, 538 [1984] [the purpose of a declaratory judgment action pursuant to CPLR 3001 is to “adjudicate the parties’ rights before a ‘wrong’ actually occurs in the hope that later litigation will be unnecessary”]). As set forth in the respondent’s September 11, 2007 notice, respondents have taken the position that petitioners are subject to the prevailing wage law and petitioners have demonstrated that this position will directly affect both its immediate and long-term planning with regard to financing school construction (Subcontractors Trade Assn. v Koch, 62 NY2d 422, 426 [1984]).
The question presented by petitioners is, generally, whether respondent’s announcement that it intends to apply the prevailing wage law to charter school construction, reconstruction, renovation, and repair was in error. For its part, petitioner Carl C. Icahn Charter School explains that its middle school construction was financed, in part, through the New York City School Construction Authority. There can be no dispute that charter school construction financed with the assistance of the New York City School Construction Authority is subject to the prevailing wage law (Public Authorities Law *460 § 1734 [10]). As applied to work performed by the Carl C. Icahn Charter School at the middle school, it appears that petitioners’ claims are academic. The court’s analysis is thus focused on petitioners’ challenges to the conclusions of law made within the respondents’ August 31, 2007 opinion and subsequent notice dated September 11, 2007.
The genesis of the prevailing wage law can be found in the State Constitution, which provides:
“Labor of human beings is not a commodity nor an article of commerce and shall never be so considered or construed.
“No laborer, worker or mechanic, in the employ of a contractor or sub-contractor engaged in the performance of any public work, shall be . . . paid less than the rate of wages prevailing in the same trade or occupation in the locality within the state where such public work is to be situated, erected or used.” (NY Const, art I, § 17.)
This constitutional provision is implemented by article 8 of the Labor Law (§ 220 et seq. [hereinafter “the prevailing wage law”]). It provides, in part, that those working on public works projects must be paid “the prevailing rate for a day’s work” (Labor Law § 220 [3]). The law was enacted to benefit workers (Matter of Hull-Hazard, Inc. v Roberts, 129 AD2d 348 [1987], affd 72 NY2d 900 [1988]), specifically, its “entire aim” is to ensure that workers would not be forced to accept inadequate wages while working for public employers (Bucci v Village of Port Chester, 22 NY2d 195, 201 [1968]). The statute, characterized by Chief Judge Cardozo as an “attempt by the State to hold its territorial subdivisions to a standard of social justice” (Austin v City of New York, 258 NY 113, 117 [1932]), must be afforded a liberal construction to accomplish its “beneficent” goals (Bucci, 22 NY2d at 201; Matter of Earth Tech, Inc. v Angello, 47 AD3d 1080 [2008]; Matter of Stephens & Rankin v Hartnett, 160 AD2d 1201 [1990]).
As a general rule, the prevailing wage provisions of Labor Law § 220 apply where (1) a public agency is a party to a contract involving the employment of laborers, workers or mechanics, and (2) the contract must concern a public works project (Matter of Erie County Indus. Dev. Agency v Roberts, 94 AD2d 532, 537 [1983], affd 63 NY2d 810 [1984]). In Erie County, the Court’s determination was based, in part, on Labor Law § 220 (2), which, at the time the Court’s decision was rendered, provided:
*461 “Each contract to which the state or a public benefit corporation or a municipal corporation or a commission appointed pursuant to law is a party and which may involve the employment of laborers, workmen or mechanics shall contain a stipulation that no laborer, workman or mechanic . . . shall be permitted or required to work more than eight hours in any one calendar day or more than five days in any one week . . .
In 2007, Labor Law § 220 (2) was amended (L 2007, ch 678, § 1) to provide as follows:
“Each contract to which the state or a public benefit corporation or a municipal corporation or a commission appointed pursuant to law is a party, and any contract for public work entered into by a third party acting in place of, on behalf of and for the benefit of such public entity pursuant to any lease, permit or other agreement between such third party and the public entity, and which may involve the employment of laborers, workers or mechanics” (emphasis added).
The sponsor’s memorandum explains that the amendment (the “third party bill”) was proposed in response to the Court’s determination in Matter of Pyramid Co. of Onondaga v New York State Dept. of Labor (223 AD2d 285 [1996]; Sponsor’s Mem, Bill Jacket, L 2007, ch 678). The express purpose of the amendment was to require the application of the statutory prevailing wage provisions, “where the involvement of a third party obviates the existence of a direct contractual relationship between the public owner and the contractor performing the work, by providing that such an arrangement constitutes a ‘contract’ for purposes of [Labor Law article 8]” (id.).
In Pyramid Co., the project at issue was the construction of a highway ramp by a private developer contracting with a third party. The Court held that although the project was privately financed, the project had a public benefit and constituted “public work” for purposes of the second element of the two-part Erie County analysis (Pyramid Co., 223 AD2d at 287). The Court rejected the Department of Labor’s contention that the highway permits provided a “contractual link or nexus” to the State Department of Transportation. Because the State was not a party to any “contract involving the construction of the project,” the Court determined that the first element of the Erie County analysis, the “contract requirement,” was not satisfied *462 {id. at 287-288). Significantly, the Court determined that the permit was not a contract that involved the employment of workers but “merely grant[ed]” the private owner “a right to access the State highway under prescribed terms and conditions” {id.).
Here, petitioners claim, first, that the statute specifically exempts them from article 8 of the Labor Law. On this point, the Charter Schools Act provides:
“A charter school shall meet the same health and safety, civil rights, and student assessment requirements applicable to other public schools, except as otherwise specifically provided in this article. A charter school shall be exempt from all other state and local laws, rules, regulations or policies governing public or private schools, boards of education and school districts, including those relating to school personnel and students, except as specifically provided in the school’s charter or in this article” (Education Law § 2854 [1] [b]).
The court declines to find, as petitioners suggest, that the foregoing provision exempts charter schools from all laws of general application, or, significantly, that charter schools are exempt from the state constitutional provisions that require the payment of the prevailing rate of wage to those engaged on projects for public work.
Petitioners next contend that the first element of the Erie County test is not met because the charter school is not a public entity or agency and “the granting of a charter by the Board of Regents of the State University of New York, the charter entity, does not create a contractual relationship” (citing United Bhd. of Carpenters & Joiners, Local 747 v New York State Dept. of Labor, Sup Ct, Onondaga County, Feb. 12, 2001, Centra, J., index No. 2000-3757, appeal dismissed as moot 291 AD2d 781 [2002]). Further, petitioners argue that the charter agreement does not satisfy the first element because it does not “involve the employment of laborers, workmen or mechanics” (citing Pyramid Co., 223 AD2d at 287-288).
It is axiomatic that where, as here, the question presented is one of pure statutory construction, an agency’s interpretation of the statute is not entitled to undue deference based on any special expertise of the agency (Stephens & Rankin, 160 AD2d at 1202). Nevertheless, the court agrees with the respondents’ determination that a charter agreement between a charter *463 school and the charter entity satisfies the first, “contract” element of the Erie County test. Notably, though it has been held that, as a “general rule,” a public agency had to be a party to a contract for the prevailing wage statute to apply (Erie County, supra), there existed “no statutory requirement that the State be a direct party to the challenged contract because the wage and supplement provisions apply broadly to ‘laborers, work[ers] or mechanics upon such public works’ ” (Matter of Bridgestone/Firestone, Inc. v Hartnett, 175 AD2d 495, 496-497 [1991]). Here, however, the court finds that for the following reasons, the issue of whether a charter school, an “education corporation” established by a public entity to operate as “an independent and autonomous public school,” is a public agency need not be resolved.[4]
Petitioner’s characterization of a charter school as an “education corporation,” not a public agency or entity, does not address the effect of the “third party” amendment to the Labor Law. As set forth above, the prevailing wage law was amended to expand the scope of those agreements which may be subject to article 8 of the Labor Law. As a result, the statute now applies to not just public works contracts where the “state or a public benefit corporation or a municipal corporation or a commission appointed pursuant to law” is a party, but also to “any contract for public work entered into by a third party acting in place of, on behalf of and for the benefit of such public entity pursuant to any lease, permit or other agreement between such third party and the public entity” (Labor Law § 220 [2]).[5]
Here, the charter agreement is a contract by and between a public entity (the Board of Regents) and a third party, the *464 charter school. Unlike a highway permit, a charter is a comprehensive agreement that sets forth the terms and conditions governing the creation and operation of an “autonomous public school.” For example, the statute requires that the charter agreement include (1) all the information required as part of the application (see Education Law § 2851 [2]), (2) any other terms or conditions required by applicable laws, rules and regulations, and (3) any other terms and conditions agreed to by the charter entity and the school (Education Law § 2852 [5]). Significantly, the charter agreement must include a provision for the proposed charter school facility (Education Law § 2851 [2] []]).
The court finds, therefore, that a charter agreement is a contract between a public entity (the Board of Regents) and a third party (a charter school) that “may involve the employment of laborers, workers or mechanics” (Labor Law § 220 [2]; Erie County, supra; 2000 Ops Atty Gen No. 2000-F3; see also Matter of National R.R. Passenger Corp. v Hartnett, 169 AD2d 127, 130 [1991] [financing agreement between State and Amtrak obligating Amtrak to perform track reconstruction was agreement that “involv(ed) the employment of laborers, work(ers) or mechanics”]; Matter of 60 Mkt. St. Assoc. v Hartnett, 153 AD2d 205, 207 [1990] [lease agreement between county and private owner/developer was contract that “necessarily involved the employment of workers”]; Bridgestone/Firestone, 175 AD2d at 496-497 [warranty agreement issued to contractor as condition of general state contract was contract that “may involve employment of laborers, workers and mechanics”]). Accordingly, the first element of the two part Erie County test is satisfied.
Having found that there exists a “contract” for purposes of the Erie County test, the issue becomes whether the contract is one for “public works.” Though the term “public works” is not defined in the statute, the term is given its generally accepted, plain meaning, with focus on the purpose or function of the project (Matter of Vulcan Affordable Hous. Corp. v Hartnett, 151 AD2d 84 [1989]). The project must have a public purpose and function and the primary objective of the project must be to benefit the public (Matter of 60 Mkt. St. Assoc. v Hartnett, 153 AD2d 205, 207 [1990], affd 76 NY2d 993 [1990]). Whether the project involves public or private property is not a controlling factor in the analysis (Feher Rubbish Removal, Inc. v New York State Dept. of Labor, Bur. of Pub. Works, 28 AD3d 1, 4 [2005]).
*465 Petitioners argue that construction, renovation, repair and maintenance of charter schools are not “public works” because the schools are not open to the “general public,” but are instead “dedicated to the use of the students, teachers, and staff” (petitioners’ mem of law at 15-18). That a charter school facility may not be “open to the general public” is not dispositive, however, inasmuch as the same could be said of any traditional public school. Petitioners’ argument does not address the question presented, that is, whether the project has a public purpose or function and whether the project’s primary object is to benefit the public. On this issue, the court agrees with the respondents’ determination that the construction, renovation, repair and maintenance of charter school facilities constitute projects for public works.
The Legislature, which is obligated to “provide for the maintenance and support of a system of free common schools” (NY Const, art XI, § 1), enacted the New York Charter Schools Act of 1998
“to authorize a system of charter schools to provide opportunities for teachers, parents, and community members to establish and maintain schools that operate independently of existing schools and school districts in order to ... :
“(a) [i]mprove student learning and achievement;
“(b) [increase learning opportunities for all students, with special emphasis on expanded learning experiences for students who are at-risk of academic failure;
“(c) [ejneourage the use of different and innovative teaching methods;
“(d) [c] reate new professional opportunities for teachers, school administrators and other school personnel;
“(e) [pjrovide parents and students with expanded choices in the types of educational opportunities that are available within the public school system; and [to]
“(f) [pjrovide schools with a method to change from rule-based to performance-based accountability systems by holding the schools established under this article accountable for meeting measurable student achievement results.” (Education Law § 2850 [2]).
*466 As set forth above, a charter school is an “independent and autonomous public school” (Education Law § 2853 [1] [c]) and the powers granted to it pursuant to the statute and the charter “constitute the performance of essential public purposes and governmental purposes of [the] state” (Education Law § 2853 [1] [d]). Charter schools are nonsectarian, may not charge tuition and, though a charter school may be single sex, it may not limit the admission of students on the basis of intellectual ability, achievement or aptitude, athletic ability, disability, race, creed, gender, national origin, religion or ancestry (Education Law § 2854 [2] [a]). Any child qualified for admission to public school is eligible for admission to a charter school (Education Law § 2854 [2] [b]). A charter school is obligated to enroll each student who submits a timely application (id.), unless the number of applicants exceeds the capacity of the school, in which case the school may select students pursuant to a random process (id.).
Though a charter school is deemed to be “independent and autonomous,” the Board of Regents maintains an obligation to oversee and control the operation of every charter school. Notably, charter agreements are subject to renewal every five years (Education Law § 2851 [2] [p]). Each year, each charter school must submit to the charter entity and the Board of Regents a report on graduation and dropout rates, performance on standardized tests, college entry rates, and spending per pupil (Education Law § 2857 [2] [a]). The report must also address whether and how the school is progressing toward the goals set forth in the charter (Education Law § 2857 [2] [b]). The Board of Regents may revoke a charter if there is a “[m]aterial and substantial” violation of the charter (Education Law § 2855 [1] [c]) or a “[sjerious” violation of law (Education Law § 2855 [1] [b]), or if the school’s student assessment measures fall below the standards adopted for public schools, with no improvement for three years (Education Law § 2855 [1] [a]).
The foregoing amply demonstrates that the Charter Schools Act, as a whole, was intended to benefit the public by creating more choices for public education within existing local school districts. There can be no dispute that if the system of charter schools created by the Legislature succeeds, the public benefits. If the system does not succeed, the local school districts acquire not only the students, but also the assets of the charter schools, including the school facilities. The provision of at least “minimally adequate” educational facilities is an essential element of the “sound basic education” available to all children *467 (Paynter v State of New York, 100 NY2d 434, 440 [2003]), including those that choose to attend charter schools. Accordingly, and because this court recognizes that the prevailing wage law must be construed liberally to accomplish its purpose as a worker benefit, the court finds that construction, renovation, repair, and maintenance of charter school facilities are “public work” for purposes of article 8 of the Labor Law.
The court has considered petitioners’ remaining contentions and finds them to be without merit.
Accordingly, it is ordered and adjudged and declared that article 8 of the Labor Law is applicable to the construction, renovation, repair, and maintenance of charter schools established pursuant to article 56 of the Education Law. In all other respects, the petition is denied, without costs.

. An “education corporation” is
“a corporation (a) chartered or incorporated by the regents or otherwise formed under [the Education Law], or (b) formed by a *456 special act of this state with its principal purpose an education purpose and which is a member of the university of the state of New York, or (c) formed under laws other than the statutes of this state which, if it were to be formed currently under the laws of this state, might be chartered by the regents, and which has been authorized to conduct its activities in this state by the regents or as an authorized foreign education corporation with the consent of the commissioner.” (Education Law § 216-a [1]; General Construction Law § 66.)

. Depending on the circumstances, the charter entity is the school board in the district where the proposed charter school will be located, the Board of Trustees of the State University of New York, or the Board of Regents (Education Law § 2851 [3]). Here, the charter entity is the Board of Regents.

. The statute outlines the factors to be considered to determine whether the proposed charter school is a private school, including,
“(a) whether the charter school would have the same or substantially the same board of trustees and/or officers as an existing private school; (b) whether a substantial proportion of employees of the charter school would be drawn from such existing private school; (c) whether a substantial portion of the assets and property of such existing private school would be transferred to the charter school; [and] (d) whether the charter school would be located at the same site as such existing private school” (Education Law § 2852 [3]).

. The court acknowledges that there exists authority predating the enactment of the “third party bill” for the proposition that an “education corporation” created by the Charter Schools Act is a “public entity” for purposes of the prevailing wage law (2000 Ops Atty Gen No. 2000-F3).

. Petitioners argue that chapter 678 of the Laws of 2007 does not change the definition of public work, citing the chapter approval memorandum (Governor’s Approved Mem, Bill Jacket, L 2007, ch 678). Indeed, therein, former Governor Spitzer explains that the bill was approved, in part, because it did not “alter the definition of public work generally” (id.). Here, however, the issue is not whether the third party bill alters the definition of public work, but whether it alters the first “contract” element of the Erie County test to determine whether the prevailing wage law applies to a given project. On this point, the statute expressly adds a type of “agreement” that may constitute a “contract for public work” that will be subject to the prevailing wage law and the legislative history evinces a clear intent to correct the “narrow court interpretations of the term ‘agreement’ ” (id.; see also Sponsor’s Mem, Bill Jacket, L 2007, ch 678).