OPINION OF THE COURT
Alice Schlesinger, J.
On February 1, 2013, the Comptroller of the City of New York responded to a letter by William J. Corny, an attorney for the Subsurface Plumbers Association (SPA). In his initial letter dated October 12, 2012, Coury had inquired as to whether a recent contract executed by the New York City Water Board with American Water Resources (AWR) on July 31, 2012, that provided for plumbing repair work for owners of private residences, was covered under section 220 (3) of the Labor Law. In other words, was the work that was to be done pursuant to this contract subject to the prevailing wage requirement of that section?
*965 The Comptroller, by his representative Constantine Kokkoris, Chief of the Bureau of Labor Law, said “yes.” The rationale given for this determination was that the agreement for Service Line Protection Program (the SLPP contract) met the two-prong test set out in Labor Law § 220. The test requires in the first instance that a public agency be a party to a contract that involves the employment of workers. Here, that requirement was met as the Water Board was a public service agency and the contract provided for plumbing and related work. No one disputes that point. The second prong is whether the contract concerns a “public works” project. The Comptroller here said it does but the Water Board and AWR, the sole signatories to the contract, insist that it does not.
That is the basis of the two CPLR article 78 petitions brought by the Water Board and AWR challenging respondent’s determination. Both petitioners seek to vacate and to set aside the Comptroller’s February 1, 2013 decision.[2]
I do not wish to spend too much time here on the procedural aspects of this controversy. Essentially what occurred was that the two petitions were brought, and the Comptroller represented by outside counsel then moved to dismiss the Water *966 Board’s petition based on standing, or alternatively to consolidate the proceedings and file a single answer. The matter then appeared before this court. After oral argument, I issued an opinion on May 28, 2013, consolidating the two matters based on common questions of law and fact and setting a schedule for the Comptroller to answer and for petitioners to reply. It was clear that the Comptroller had not moved and was not moving against AWR on standing grounds. Therefore, to expedite the resolution of this controversy, I said that the Water Board’s standing would be decided as part of my final decision, as it will be.
Finally, on July 17, 2013,1 determined an order to show cause (OSC) filed by AWR on or about May 22, 2013 (motion sequence No. 003). This OSC had sought a temporary restraining order and preliminary injunction to enjoin the Comptroller from instituting a compliance investigation. A stipulation to that effect signed by counsel for these parties on July 16, 2013 was so ordered by the court.
After timely receipt of all the papers, which included a letter dated July 1, 2013 from Andrew Gelfand, counsel for the Water Board, I scheduled oral argument for the afternoon of August 8. The before-mentioned letter, a copy of which was sent to counsel, merely brought to my attention a recent Court of Appeals decision, De La Cruz v Caddell Dry Dock & Repair Co., Inc. (21 NY3d 530 [2013]), which had been decided only three days earlier, on June 27, 2013.
Oral argument was informative and valuable. Toward its conclusion, I thanked all counsel but also said that since I believed, on the basis of all that I had read and heard to date, that the Comptroller had an uphill battle, I would give its fine attorney the last word. Now, after reviewing the specific facts of this case, the relevant case law and the arguments, I must conclude that counsel was unsuccessful in convincing the court that the Comptroller’s position has merit. In other words, I find that the contract here at issue does not concern “public works” and therefore is not subject to the prevailing wage mandate found in section 220 of the Labor Law.
This discussion must begin with events that occurred early in the year 2011, when DEP issued a press release announcing that the Water Board was making a request for expressions of interest from companies interested in providing a water service line protection program to residential property owners in New York City. The idea was to provide a voluntary insurance plan to *967 private homeowners. By paying a small charge each month to the Water Board, which would be added to the owner’s monthly bill, the owner would receive professional repair services when there was a service line break.
Private homeowners own and are responsible for the maintenance of their own pipes and water service lines. It appears that they also own and are responsible for the lateral service line water pipes located outside their homes under the street which connect to the main waterlines owned by the City. I use the term “appears” because, while counsel for the Comptroller argues that this ownership is still an open question, Ms. McLean from the Water Board insists that this point was conclusively established as far back as 1861 in a decision by the New York Superior Court entitled Terry v Mayor (8 Bosw 504 [1861]), and was reestablished in 2005. Attached to the reply memorandum are three documents which address this topic.
The first is a copy of the 1861 decision, attached as exhibit A to the Water Board’s reply memorandum of law. That case involved damage to the plaintiffs property from water leaking from defective service pipes in a building two doors away from plaintiffs building that was being used for a public school. It was clear that the City, who was the defendant, may have been the nominal owner of the building housing the school, but it had no right to buy or sell the land. A separate claim by the plaintiff was that the City was liable as the owner of the Croton Aqueduct where the water originated. The defect here was found in the lateral service pipes, which the court said {id. at 510) had been “inserted in the main street pipes by private individuals at their own cost and risk, to bring the water into their own premises for consumption, and they remain the property of such individuals.” As an aside, the plaintiff lost his suit because no liability was found against anyone.
The other two documents were attached to Ms. McLean’s affidavit and consisted of letters exchanged between the Deputy Chief of the City’s Environmental Law Division on behalf of the Deputy Commissioner of DEP and officials of the New York State Department of Health. The issue there involved ownership of water service lines for a lead service line replacement program. The first letter, dated April 22, 2005, by Susan Amron (exhibit G) clearly stated the City’s position “that water service lines in the City are owned by and the responsibility of the owner of the property connected by the service line to the City’s water main.” This being the case, the City believed it should *968 only be responsible for the lines that supply water to property owned by it, the City. The second letter (exhibit H), dated June 22, 2005, referenced Ms. Amron’s letter and accepted her position “that the information provided documents that the City owns or exercises direct control over only those service lines that supply water to City owned properties or facilities.”
The above point has some importance here because of the central controversy between the parties. Petitioners argue that the contract between them is essentially one that benefits private homeowners who own and have all responsibility for both their own pipes and adjacent service pipes. To the extent that the public also benefits from the contract, as it provides a more effective and efficient way of dealing with leaking water pipes, petitioners urge that any such benefit is merely incidental to the program.
But the respondent Comptroller urges that the SLPP contract is a contract for public works because the Water Board is a public benefit corporation whose primary objective is to benefit the public. Its counsel then proceeds to point out all the public aspects of the contract. Counsel says that “[t]he public purpose for the SLPP contract is spelled out directly in the RFP” (respondent’s mem of law in opposition to the consolidated verified petitions at 4).[3]
The DER which is a public agency and the parent agency of the New York City Water Board, issued a statement which said that
“such a program (for residential service line protection) would be in the best interest of the City, as the expeditious repair of leaking and broken service lines under the program would help prevent damage to City infrastructure, reduce response costs for the City, limit damage to homes, and enable City resources to be used more efficiently.”
Also, counsel points out that via the SLPP contract, AWR assumed obligations beyond those to the enrolled homeowners. The examples given were: (1) that AWR paid to the Water Board $200,000 as an “initial integration fee”; and (2) that the contract provides that the Water Board may request AWR to *969 perform additional repairs on the service lines of DEP customers who are not enrolled in the program.
Counsel for respondent then provides a laundry list of the Water Board’s involvement in the administration of the SLPP contract to illustrate his position that the Water Board is not just an intermediary which collects fees for AWR, but “has substantial responsibility for managing the contract” (respondent’s mem of law at 5). Examples given here are the Water Board’s billing and collection of policy premiums, which are classified as water and wastewater charges that would, if not paid, constitute a lien on the homeowner’s property.
Also, there are response times that AWR must meet and penalties if it fails to do so. In this regard, AWR is required to provide monthly reports to the Water Board describing the repairs it has made including any complaints filed to regulatory bodies as a result of its repairs. Further, the Water Board can object to the subcontractors used by AWR and in fact may suspend AWR’s services at any time or for any reason. But if this happens, the Board must pay AWR a termination fee.
The contract also requires AWR and its subcontractors to obtain a DEP service line work permit and a Department of Transportation street opening permit before they begin work involving these activities. And not surprisingly, AWR must restore all ground features in compliance with City rules.
While respondent Comptroller recites the above facts to show that the public agency party to the contract continues to have a role in the administration of the contract, respondent’s main argument is that the contract’s primary objective is to benefit the public. That is the second prong in the determination of whether a contract is subject to the prevailing wage requirement of Labor Law § 220. As noted earlier, the first prong, that a public benefit corporation is a party, is obviously not in dispute because the Water Board is a public benefit corporation.
However, as stated above, the singular and core issue is whether the primary objective of the contract is to benefit the public. And on this point, both petitioners AWR and the Water Board, parties to the SLPP contract, argue strongly that that is not the case. While the contract may have a public purpose, they argue, its primary purpose is to aid private homeowners who own and are responsible for waterlines to their property and who often are faced with significant costs in connection with unanticipated and often emergency repairs to those lines.
*970 Counsel for the Water Board argues that this contract is almost exclusively for the benefit of private homeowners in that it gives them the choice whether to buy a kind of affordable insurance policy to cover repair costs to their lines. He points out that in the RFP, which the Water Board put out in 2011, six objectives were announced. Of those, the first four were exclusively for the benefit of private owners of residential properties. In fact, the phrase “owners of residential properties” is used in the first two objectives. Those four objectives read this way:
• “Provide owners of residential properties affordable protection against the significant, unexpected costs of repairing or replacing leaking water service lines”;
• “Provide owners of residential properties affordable protection against the significant, unexpected costs of repairing or replacing broken sewer service lines and potentially clearing blockages”;
• “Ensure that timely, high quality plumbing services in adherence to City Codes are provided to covered customers”; and
• “Educate property owners as to their responsibility regarding service line maintenance.”
The last two objectives benefit both the private homeowner and the public. But petitioner argues that these last two do not change the fundamental nature of the contract; they merely state that the public should also benefit from this program. Those last two objectives are:
• “Minimize damage to surrounding streets and infrastructure, and reduce expense to the property owner and DEP by ensuring repairs are made in a timely manner”; and
• “Minimize the impacts to homeowners, neighbors, and the public sewer system from improperly functioning sewer service lines.”
Petitioner Water Board counters the analogy which respondent Comptroller makes between the maintenance of sidewalks and that of sewer service lines. It points out that sidewalks are inherently public; in other words, sidewalks are regularly used by the public and if they need repair, while the adjacent prop *971 erty owner may have an obligation in the first instance to fix them, if the property owner fails to do this, the City will complete the repair. But this is not so with regard to water service lines; if the property owner fails to repair the line he owns, the City will not repair it. Rather, it will simply shut off the water to that private property owner.
The petitioners, as stated earlier, are asking the court to vacate the Comptroller’s decision that prevailing wages apply here pursuant to section 220 of the Labor Law. Before I determine that core issue, I must determine the applicable standard of review. The Comptroller argues that the standard is deference, meaning the decision can only be set aside if I find that the decision was arbitrary and capricious or an abuse of discretion. The rationale for this standard, counsel argues, is that the Comptroller has a duty to determine whether section 220 applies, and that determination involves an analysis of the facts surrounding the SLPP contract. In other words, this decision is not simply a matter of statutory construction when the expertise of the official is not involved. Here, that expertise is involved, and the standard to set the determination aside is a high one. The Comptroller maintains that there is nothing arbitrary or capricious about his decision. This is clear by the factual rationale earlier discussed.
But both the Water Board and AWR argue that the Comptroller’s decision is most definitely not entitled to judicial deference. Why? Because the issue here of what constitutes “public works” is one of pure statutory interpretation and analysis, and the expertise of the Comptroller is not needed in making such a decision.
Not surprisingly, the parties cite to the same cases. They also properly highlight Matter of Erie County Indus. Dev. Agency v Roberts (94 AD2d 532 [4th Dept 19833) as a controlling one. The Court of Appeals affirmed that decision “for the reasons stated in the opinion by Justice Emmett J. Schnepp” (63 NY2d 810, 812 [1984]). Therefore, precisely what this Justice said and what he relied upon is important.
Erie County was decided by the Fourth Department in 1983. Similar to the instant case, it also concerned whether the Commissioner of Labor had correctly determined that the prevailing wage requirement of section 220 of the Labor Law applied. In Erie County, Special Term hearing the article 78 proceeding had rejected the Commissioner’s determination and held that section 220 would not apply against the parties to an industrial *972 development bond project of Erie County. That is precisely what petitioners are asking this court to do. In Erie County, Justice Schnepp, writing for the Appellate Division, agreed with Special Term that the projects involved were not “public works” within the meaning of section 220 of the Labor Law. But what made that opinion so important, together with the affirmance by the Court of Appeals, is the following language at the very end of the decision (94 AD2d at 541):
“Finally, we note that the commissioner is charged with the responsibility for the administration of section 220 and that the construction given statutes by an agency so charged, if not irrational or unreasonable, should be upheld (see Matter of Fineway Supermarkets v State Liq. Auth., 48 NY2d 464, 468). The question here, however, is one of statutory reading and analysis and there is no need to rely on the expertise of the commissioner. Under the circumstances, deference to her determination is not required (see Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459).”
The Court then affirmed the lower court’s decision, agreeing with Special Term that the term “public works” appearing in section 220, though not defined, “has a generally accepted plain meaning” (id. at 538). After referencing Webster’s New World Dictionary and Black’s Law Dictionary, the Court stated that “public works” are “fixed works constructed for public use” (id.). The Court further noted that the “definitions focus on the purpose or function of the works for ‘public use or enjoyment’ ” (id.). The Court then analyzed the project at issue, the Quo Va-dis construction project, and concluded that it “cannot be considered a public works project,” in part because no public funds were used and no costs would be reimbursed by the government (id. at 539).
Finally, the Court cautioned (id. at 540) that the “public purpose of the financing scheme must not be confused with the purely private purpose of the venture itself . . . .” While there was public involvement in creating economic conditions and incentives encouraging private development, this “promotion of economic development is an incidental benefit” (id.).
Therefore, the Erie County decision stands for two important points. First, it holds that the term “public works” has a generally accepted plain meaning which relies on the main purpose of the venture, not to be confused with any incidental benefit. *973 Second and even more significantly, it holds (id. at 541) that in a situation such as this where the question is simply one of “statutory reading and analysis . . . there is no need to rely on the expertise of the commissioner.”
Thus, when respondent makes his argument that special deference must be given to the Comptroller’s decisions in matters involving the application of section 220, he is wrong. Likewise, when respondent urges that the Comptroller’s decisions in these matters can only be set aside if found to be “arbitrary and capricious,” he is also wrong.
The Comptroller cites to Matter of Hart v Holtzman (215 AD2d 175 [1st Dept 1995]) as support for his argument as to the deference standard. And in a way, that is understandable. There, the lower court upheld the Comptroller’s determination that, though the Greenpoint projects were publicly financed, they were not “ ‘public works’ subject to the prevailing wage rate under Labor Law § 220” because they were privately owned and constructed and they were housing for poor families (id. at 176). The Appellate Division affirmed, agreeing that the determination had a rational basis. Further, the Court specifically said that “the Comptroller’s determination was neither arbitrary or capricious nor affected by an error of law” (id.).
However, the fact that the Judges hearing that case held that the Comptroller’s determination was rational cannot and does not mean that judicial deference in these matters is the standard. On the contrary, that very Court in discussing the meaning of “public works” as being based on the “direct or primary objective, purpose or function of the contract’s work product” (id.) cited to an earlier decision, Matter of National R.R. Passenger Corp. v Hartnett (169 AD2d 127 [3d Dept 1991]), that rejected the notion of deference. Specifically, the Third Department (National R.R., 169 AD2d at 130), citing to Erie County (94 AD2d at 541) and Matter of Stephens & Rankin v Hartnett (160 AD2d 1201, 1202 [3d Dept 1990]), said that “[t]he issue of what is a public works is viewed as essentially one of statutory reading and analysis, such that respondent’s determination that a given project is a public works is not entitled to special deference.”[4]
*974 Therefore, in the first instance, I find that special deference does not have to be given to the Comptroller’s decision here. Nor, in order to overturn it, must I find that the decision is arbitrary and capricious. I hasten to say, this court very strongly supports the objects of Labor Law § 220 as it carries out the very real beneficial purpose of paying workers employed on public works prevailing wages. However beneficial that might be, though, such a determination can only be applied to employees who are engaged in public works. In other words, the Comptroller cannot misconstrue the facts and their obvious implications to reach a desirable but unwarranted result.
Saying that, I find that the contract here does not concern public works. As referenced earlier, the definition of public works includes the concept that the project’s primary objective must be to benefit the public. If there is merely an incidental benefit to the public, that is not enough to classify the project as public works subject to the Labor Law § 220 prevailing wage mandate.
Here, I find it obvious that the primary objective of this contract is to offer private homeowners an affordable plan to cover large, unexpected repairs on the sewer service lines they own. The contract is not to repair or work on public structures, even though the repair work may involve the City’s water system when it connects to privately owned sewer service lines.
Obviously, this program may benefit the public. After all, it is a good thing for water pipes to be fixed quickly by qualified *975 workers, irrespective of ownership. Enrolled private owners, for a relatively small monthly fee, buy such a service.
Further, the fact that the Water Board collects these fees in exchange for a small charge to AWR, and in certain ways oversees the program, does not change the fundamental nature of the contract, which again is the contract’s clear purpose to benefit private homeowners.
Many cases support this interpretation. One is Hart v Holtzman cited by respondent. As noted earlier, Hart involved publicly financed housing for low-income tenants. But since the primary purpose of the housing was to benefit these tenants who would rent from private owners, the Comptroller (who is the respondent here) argued successfully that section 220 of the Labor Law was not implicated, even though there was public financing, and even though the City, via its Department of Housing Preservation and Development, had significant oversight from the beginning of the project and continuing throughout.
Matter of Vulcan Affordable Hous. Corp. v Hartnett (151 AD2d 84 [3d Dept 1989]) is another similar case. It also involved affordable housing where the City of Albany had received a grant and entered into an agreement for the construction of such housing. The Court there again discussed section 220 cases and their focus in defining what the term “public works” means. Here, since the primary objective of the project was to increase private low-income housing, the public was not a direct beneficiary of the work.
In Matter of Sarkisian Bros. v Hartnett (172 AD2d 895 [3d Dept 1991]), a different result was reached. The facts there concerned Sheldon Hall, a former classroom building located on the campus of the State University of New York (SUNY) at Oswego. SUNY had abandoned this building and transferred it to the State’s Office of General Services (OGS). Thereafter, a project was developed to renovate the building and use it as a hotel and convention center. Sarkisian Brothers, the petitioner, executed an agreement whereupon it would bear the costs of the renovation. As the work was being done, workers complained about their rate of pay. The Commissioner of Labor ordered hearings and thereafter confirmed the report of the Hearing Officer that the Sheldon Hall renovation was a public works project subject to prevailing wages.
Petitioner then commenced an article 78 proceeding. The Court upheld the decision, finding that the project in dispute was intended to benefit the public. First of all, the building was *976 to be leased, not sold, so it did not lose its public ownership. The agreement was subject to approval in multiple ways by OGS and SUNY to make sure the needs of the public were met. Further, there was a guarantee of public access to Sheldon Hall on at least one day per month, and 75% of its rooms were to be reserved to SUNY. These provisions and others demonstrated “the public use, public ownership, public access and public enjoyment characteristics of the project” (172 AD2d at 896).
Earlier in these proceedings, I informed the parties that the Comptroller’s motion to dismiss the Water Board’s petition for lack of standing would be decided, but no argument was needed since there clearly was standing by AWE, the other signatory to the contract. My decision here is that the Water Board does have standing, not on statutory grounds but based on principles of common law. Clearly, the role that the DEP and the Water Board assumed via their RFP and the contract and their continuing role in the administration of the contract gives them an interest sufficient to contest the prevailing wage decision.
So to recapitulate, I find that the question whether the SLPP contract involves “public works” within the meaning of Labor Law § 220 is resolved by the court as a matter of statutory interpretation. In other words, this court’s review of the section 220 issue is determined using this standard of review rather than the deference or arbitrary and capricious standard. I find that the respondent Comptroller’s decision that this contract concerns “public works” subject to the section 220 prevailing wage requirement is wrong as the primary objective of the contract is to benefit private homeowners. Therefore, both petitions are granted and the Comptroller’s decision of February 1, 2013 is vacated.
Accordingly, it is hereby ordered that the Comptroller’s motion to dismiss the petition by the New York City Water Board is denied; and it is further adjudged that the article 78 petitions filed by American Water Resources, LLC and the New York City Water Board to annul the Comptroller’s February 1, 2013 decision are granted.

. During the course of submissions by the parties, various affidavits were submitted by individuals involved in the contract and determination. Constantine Kokkoris, previously mentioned, submitted one. Another was from H. Jeremy Kierman, program manager of the program for AWR. A third was from Mathilde O. McLean, Treasurer of the Water Board. She was personally involved in all aspects of this program, beginning with the planning stages before the request for proposals (RFP) was even drafted.
Kokkoris refers to a lack of response from the City’s Department of Environmental Protection (DEP), which is the Water Board’s parent agency, and a failure to come forward by AWR. Ms. McLean takes issue with this first part and states that records indicate that DEP was not contacted until December 13, 2012, when an email request was made for a copy of the contract, a request complied with the following day. She also states, contrary to Kokkoris, that the Water Board was interested in this issue and that she attended a meeting with various interested parties on December 13, 2012.
However, what seems not to be in dispute is that AWR was never contacted before the February 1, 2013 decision was made. In fact, Mr. Kierman states that he did not find out about the issue and the Comptroller’s determination until February 3, 2013, two days after the letter was sent, and then not from the Comptroller. Rather, a member of SPA gave him a copy of it. He complains, it appears with some justification, that during this three-month decision-making process, while the Comptroller had a number of ex parte communications with representatives of plumbers’ associations, who were nonparties to the contract but had a clear interest in obtaining higher pay for their members pursuant to a finding that “prevailing wages” did apply, AWR, a party to the contract, in fact the only party other than the Water Board, was never contacted, even though it presumably had information to provide.

. The RFP was issued in December 2011. AWR, a limited-liability company that sells water and sewer service line protection contracts, submitted a proposal in response to it. On June 15, 2012, the Water Board chose AWR, and finally on July 31, 2012, the Water Board and AWR entered into a contract, the SLPP contract.

. National R.R. concerned financing for an Amtrak route between New York City and points north. The State of New York was to contribute 40% of the cost of the project and the federal government would contribute the rest. *974 Contractors and subcontractors were hired by the entity in charge, the petitioner, to do the necessary work. The Commissioner of Labor then issued a notice of hearing stating that the subcontracts violated Labor Law § 220. As a threshold issue, the Hearing Officer assigned to the case determined that the project constituted a public works. The Commissioner upheld this decision. Petitioners then commenced article 78 proceedings challenging that determination. The appellate court, giving no special deference to the determination, annulled it, finding that the venture had an essentially private purpose.
Matter of Stephens & Rankin v Hartnett, the other decision relied upon in National R.R. beside Erie County, concerned replacement of the asphalt overlay on the Lewiston-Queenston Bridge connecting the United States and Canada. Petitioner was to do the work and had entered into a contract with the Niagara Falls Bridge Commission. The contract was to be performed under the laws of New York and specified that petitioner was to pay the prevailing rate of wages to the bridge laborers. However, an issue arose about wage supplements to some of the workers. The Commissioner found in favor of the workers, and this appellate court upheld that determination, citing to Erie County and stating that “[ajlthough the issue presented is one of pure statutory construction such that we are not required to give deference to respondent’s interpretation . . . , we nonetheless agree with the construction adopted by respondent” (160 AD2d at 1202).